### JAMES P. MONAHAN *et al.*

*v.*

### WILLIAM FITZGERALD.

*Filed at Ottawa January 19, 1897.*

1. BUILDING CONTRACT—*superintending architect cannot delegate his authority.* A superintending architect authorized by the building contract to issue certificates of work to the contractors cannot delegate authority to another to issue valid certificates of such work.

2. SAME—*negligence of superintendent does not bind owner.* Failure of an acting superintendent to object to a defective job of plastering as the work progresses is not a waiver of the provisions of the contract, and such failure does not bind the owner.

3. SAME—*contractors are chargeable with knowledge of their own defective work.* Contractors for the plastering of a building are bound to know of defects in their work, and of the failure of such work to comply with the contract, without being advised thereof by the superintendent.

4. SAME—*acceptance of work does not waive latent defects.* Latent defects in work under a building contract, which defects are not open to inspection, are not waived by the acceptance of the work in ignorance of their existence.

*Monahan* v. *Fitzgerald,* 62 Ill. App. 192, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

STIRLEN & KING, for appellants.

BLACK & FITZGERALD, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from a judgment of the Appellate Court affirming a decree of the circuit court of Cook county dismissing appellants' bill for want of equity, filed to establish a mechanic's lien for lathing and plastering an apartment building. The bill alleged full performance by appellants according to the contract, specifications and directions. The defense was, that the work and materials were so defective that a large portion of the plaster fell off of the ceilings within a few weeks after it was put on, and that the cost of repairs exceeded the amount claimed by the appellants to be due under the contract. It is not disputed by appellants that large portions of the plaster fell from the ceilings of the different flats into which the building was divided, soon after the work was completed and the building heated, as shown by appellee, but their contention is that such falling was not due to any defect in their work or materials, but to other causes over which they had no control, such as the settling of the building, the shrinkage of lumber, the exposure to weather by leaving the building open, and the sagging of joists caused by heavy materials to deaden sound being placed between the floors and ceilings. The master found, in substance, that the falling of plaster was due to the fact that the plaster was not sufficiently keyed to hold it in place, and that this defect in the work arose from the use of laths of too great width, the failure to leave sufficient space between them and to use sufficient force in applying the material, so as to force the plaster through and form a proper key.

The contract and specifications provided in detail for a first-class job of plastering and for the use of first-class materials. It was provided, among other things, as follows: "Mortar shall be  *  *  *  applied so that the key will be solidly filled, and work to be gauged with plaster paris, so as to allow the work to set up quickly.  *  *  * Entire job to be carefully done, so as to leave in perfect

order when finished. The entire work is to be done under the immediate supervision of the superintendent, and any work done without his instruction or not as specified, and also all work done badly or injured by the weather, must be taken out and done over. All patching and re-patching to be done, wherever found necessary, without extra charge." Payments were to be made upon certificates of the architect.

It appears that in November, 1893, and before the work was completed, Warren, the architect and superintendent, went to Europe and did not return until the following March. He had, however, employed one Ingraham to act as superintendent, who looked after the work for him as it progressed, both before and after his departure. Appellee also employed this superintendent to perform other duties about the building for him, and there is evidence tending to show that appellee agreed with Warren that Ingraham should act as superintendent in Warren's absence. The architect left with his stenographer certain certificates signed in blank, with directions to deliver them on agreement of the parties. Before his return the work was completed, but some of the plaster had fallen, and upon the promise of appellants to patch up and finish work of this character, Ingraham, who was the acting superintendent, directed the issuing of the architect's certificates to appellants, and they were filled up and delivered accordingly. After appellants received these certificates and had repaired the work where the plaster had fallen before the receipt of the certificates, further and larger quantities of the plaster fell from the ceilings of a large number of the rooms and hallways of the house, damaging the building and requiring great additional expense in repairs. These repairs appellants refused to make, alleging that the fault was not in their work but in the work of others, as above stated. The acting superintendent undertook to recall and cancel the certificates, but appellants refused

to surrender them, and upon appellee's refusal to pay, filed their bill to establish their lien.

The master found that the certificates were not binding on appellee, for the reason that they were not issued in accordance with the contract; that the contract required that the architect must himself determine whether the work had been properly done before issuing the certificates, and that he could not delegate this duty to another, but found further, that appellants were not bound to wait until the architect should return from his trip abroad, and that the architect's certificate as a prerequisite to payment was waived by his absence. He further found that said Ingraham daily inspected the work as it progressed, and that the defective manner in which it was done was waived by his failure to object, and by his apparent acquiescence in the manner in which appellants were performing the contract on their part, and recommended a decree allowing the complainants their demands. Both parties excepted to the master's report so far as its findings were adverse to them, respectively, and the circuit court overruled complainants' exceptions and sustained all but two of those filed by defendant, and held complainants were not entitled to a decree, and dismissed the bill for want of equity.

A great volume of evidence was taken on the different phases of the case, and while we have examined and considered it all, so far as counsel have presented it to us by their abstracts and arguments, it will not be necessary to refer to it at any considerable length in the disposition of the case. Much of the testimony related to the alleged inferior material used in making the mortar, but as the evidence abundantly shows, and the master found, that the plaster fell because it was insecurely and insufficiently keyed, we do not regard it important to determine whether the exceptions to the master's findings that the material was not defective should have been sustained or not. The chancellor sustained the finding

of the master that because of the excessive width of the laths, of the manner in which they were put on, and of the lack of sufficient force in applying the plaster, no sufficient key was formed to hold the plaster in place, and that in that respect the contract was not complied with.    This finding is in accordance with the preponderance of the evidence, and must be sustained.

We agree that the certificates issued were not in accordance with the contract, and were invalid; and even if it be conceded that appellants were not bound to wait for the return of the architect, but that by his absence the necessity of first procuring his certificate was waived, still appellants were not entitled to a decree without proving compliance on their part with the contract in other respects.    If the plaster was so improperly put on that it could not sustain its own weight, but fell from the ceilings almost before it was thoroughly dry, the mere fact that the superintendent did not object to the work as it progressed would not amount to a waiver of the provisions of the contract relating to the character of the work and the manner in which it should be done. Appellants were bound to know of such a fatal defect in their work and of their departure therein from the contract.    If the superintendent also knew of it as it was being done, he was a party to the fraud; and if he did not know of it, but it was concealed from him, there was no approval by him by acquiescence.    In either case, appellee was not bound by the failure of the acting superintendent to object to the manner in which the work was being done as it progressed.

It would be a novel doctrine to hold that a contractor who, under a contract requiring the best workmanship and materials, with specifications of details, has upon his own motion substituted work or materials of such an inferior character as to render the structure, when completed, valueless, may nevertheless recover the contract price upon proof that the architect or superintendent

made no objection as the work progressed. It was no sort of compliance with this contract to so plaster these ceilings that the plaster, because insufficiently keyed, would in large areas fall to the floor below when the house was being occupied, whether the superintendent knew or did not know of the defective character of the work as it progressed. Suppose appellants had nailed the laths so slightly they would not sustain the weight of the plaster, and laths and plaster had all fallen to the floor; could they have recovered on the ground that the superintendent waived compliance with the contract by not objecting, as the laths were being put on, that they were insufficiently nailed? It may be remarked, however, that the evidence in this case does not show that his attention was called to the fact that the laths were half an inch wider than required by the specifications, and were nailed so closely together that no sufficient room was left for the plaster to pass through, or that the plaster was spread upon them with such little force that it was not pressed through in sufficient quantities to form a key to hold it in place. It is not a question whether a deviation from the terms of the contract may not be expressly or impliedly authorized by the architect or superintendent so as to bind the owner, as was the case in *Vermont Street M. E. Church* v. *Brose,* 104 Ill. 206, and other cases cited by appellants. "A party who has accepted work is not held to have waived defects in it, if, like plastering, it may have latent defects which are not open to inspection." *Korf* v. *Lull,* 70 Ill. 420; *VanBuskirk* v. *Murden,* 22 id. 446.

No error has been committed to the prejudice of appellants, and the judgment of the Appellate Court will be affirmed.                    *Judgment affirmed.*