# Schillinger Bros. Company, Appellant, v. Thompson-Starrett Company, Appellee.

## Gen. No. 16,964.

1. BUILDING AND CONSTRUCTION CONTRACTS—*improper performance.* Where a subcontractor lays cement floors and it appears from the evidence that the floors were poorly laid; that the cement did not bond, and that the work and materials was full of voids and that it quickly cracked to pieces; that the architect ordered the floor torn up and replaced; and that the contractor expended in replacing the floor and in paying for the subcontractor's material an amount equal to the contract price, a verdict for the contractor will not be disturbed.

2. BUILDING AND CONSTRUCTION CONTRACTS—*supervision not a waiver of improper performance.* Where a subcontractor defectively lays cement floors, that the contractor's foreman or superintendent watched the progress of the work and made no complaint will not be a waiver nor constitute an estoppel.

3. BUILDING AND CONSTRUCTION CONTRACTS—*waiver of defects not admissible under declaration alleging performance.* Where it is claimed that a subcontractor laid cement floors defectively, under a declaration in an action against the contractor alleging proper performance, waiver of defects cannot be proved.

4. APPEAL AND ERROR—*necessity of proposition of law to save question for review.* Where a subcontractor defectively lays cement floors and no propositions of law on a nonjury trial are presented as to whether the defects were waived, the question of waiver cannot be urged on appeal.

5. BUILDING AND CONSTRUCTION CONTRACTS—*proof necessary to recover on quantum meruit.* Where a subcontractor performed his work in an improper manner, so that the greater part of certain cement floors had to be replaced, in an action against the contractor he cannot recover on a *quantum meruit* for the properly performed work if there is no proof as to the value of such work.

6. APPEAL AND ERROR—*necessity that objection to evidence be specific.* Where a contractor is compelled to relay cement floors that have been defectively laid by a contractor and introduces evidence of the market value of the material used in relaying, objection that the witnesses were not qualified to testify to such market value will not be considered where the only objection made to such evidence was that the price of material was immaterial under the issues.

7. BUILDING AND CONSTRUCTION CONTRACTS—*right to use night labor in replacing defective work.* Where a subcontractor defect-

ively lays cement floors so that they have to be replaced, the contractor may use night labor, costing more than day labor, in replacing the defective work where the subcontractor had had time and opportunity to lay the floors in acccordance with the terms of the contract.

Appeal from the Municipal Court of Chicago; the Hon. OSCAR M. TORRISON, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed June 4, 1912. *Certiorari* denied by Supreme Court (making opinion final).

MCCASKILL & SON, for appellant.

MAYER, MEYER, AUSTRIAN & PLATT, for appellee.

MR. JUSTICE F. A. SMITH delivered the opinion of the court.

Prior to 1909, appellee, hereinafter called defendant, was engaged in the construction of a building in Chicago for the Spaulding & Merrick Co. The fourth and sixth floors of this building were constructed on a reinforced concrete base, over which a maple floor had been laid. As the maple flooring on parts of those floors where special machinery was to be installed did not meet the purposes of the owner, it contracted with the defendant to put in waterproof floors in their stead. Thereupon the defendant, through its manager, took up the matter with appellant, hereinafter called plaintiff, which was engaged in the business of laying concrete. On June 24, 1909, the plaintiff wrote the defendant that "We hereby propose and agree to furnish all labor and material to fully construct cement floors in the fourth and sixth story for the Spaulding & Merrick building, as per measurements marked on plans. We will take up the present wood sleepers and remove cinder concrete and lay cement floor over the reinforced concrete construction, commencing with one-inch wearing surface at sewer outlet and gradually increase the same to a height of three inches. Whenever this floor is more than one inch thick concrete will be composed of fine crushed

stone, Torpedo gravel and standard brand of Portland cement. The one-inch finished coat is to be composed of one part Star Stettine cement, two parts sharp Torpedo sand, laid with a smooth and even finish. We also furnish six No. 3 Bell traps, as illustrated on the enclosed circular. All of the foregoing work for the sum of $1,340.''

On June 26, 1909, the plaintiff again wrote the defendant as follows:

''In reference to our bid of June 24th for construction of cement floor in the Spaulding & Merrick building will say if this concrete base mentioned in our proposition is to be constructed of Stettine cement, used one part Stettine cement, four parts crushed gravel and two parts Torpedo sand, our price for the work enumerated in our former proposition will be $1,560.''

After sending this letter, according to the testimony of Mr. Gumbinger, the secretary and treasurer of plaintiff, he called upon Mr. Fisher, who wanted to know if the plaintiff would do the work in accordance with the proposition contained in the letter of the 26th, to which Mr. Gumbinger answered that he would. Mr. Gumbinger, on his direct examination, stated that at this conversation he told Mr. Fisher that they would wet the old concrete ''so as to get that bonded—better bonded, and he said, 'Go ahead and do that and I will send you an order.' ''

On July 19, 1909, the plaintiff wrote the defendant as follows:

''In accordance with conversation had with your Mr. Fisher last Thursday, we are now at work at the Spaulding & Merrick building, doing the work in accordance with our conversation and as per our proposition of June 26th last for the sum of $1,560, payment to be made upon the completion of the work. Kindly send us your acceptance as we have not received it.''

On the same day Mr. Fisher, on behalf of the de-

fendant, appellee, sent the following letter to the plaintiff:

"We hereby accept your proposition to do the following work at Spaulding & Merrick building, 43rd and Colorado avenues, Chicago, for which we agree to pay you on completion and acceptance of same by the architects the sum of $1,560.

"Take up and remove the sleepers and cinder concrete flooring over floor construction in the space on fourth and sixth floor. On this space, except the space indicated for roadster, construct a concrete floor pitch for drains, of which there will be six, to be furnished by you and set in locations directed by architects. This floor to be constructed on a base composed of one part Star Stettine cement, two parts sharp Torpedo sand and two parts fine crushed stone, a finish of 1 inch starting from the drain to the level of the finished wood flooring shall be of one part Star Stettine cement and two parts sharp Torpedo sand, laid with a smooth and even surface. On completion of the work remove all rubbish and leave premises in clean condition."

There is some dispute as to when the plaintiff began work on the floors, some witnesses stating it to have been started on July 19, 1909, and others July 20th or 21st. The plaintiff finished laying the floors about August 15, 1909.

Shortly thereafter the architect for the building, Mr. Fellows, examined the floors that had been put in by the plaintiff and discovered that the cement surface of the floors had not bonded from which they had become so badly cracked that they were unserviceable and unfit for any purpose. He thereupon rejected the floors and ordered them torn up and replaced. The defendant then notified the plaintiff in several letters that the work was defective and unsatisfactory and did not meet the approval of the architect and that they expected the plaintiff to put the floors in first class shape. This the plaintiff refused to do unless paid therefor. The plaintiff claims to have finally

sent a few men around but the defendant's men were obliged to replace the floors.

The present action was brought in the Municipal Court of Chicago to seek to recover $1,560, the original contract price plus $206.10, the value of the labor and material alleged to have been expended in assisting the defendant to correct the defects in the floors as first laid.

On the other hand, the defendant's uncontradicted evidence shows that it expended $1,088.45 in replacing plaintiff's unskilful work and that it paid to Meacham & Wright, material men, a bill for $527.25 for cement sold to the plaintiff and used on the floors in question.

The trial was before the court without a jury, and the court found the issues in favor of the defendant.

Upon a careful review of the evidence in the record we are of the opinion that the plaintiff did not comply with its contract with the defendant. It is not seriously controverted in the evidence that the floors, as originally laid by the defendant, were poorly laid; that the cement did not bind, and that the work and material were full of voids and that it quickly cracked to pieces after it was laid. We do not think that the plaintiff was entitled to recover under its contract for the work done. The plaintiff did not secure an architect's certificate showing that the work was done. On the contrary it clearly appears that the architect condemned the work and required the floors to be relaid. We find no reason in the evidence for disagreeing with the finding of the trial court on the questions of fact.

It is urged by the plaintiff that the defendant having its foreman on the work as the work progressed and making no protest as to the doing of the work, either as to the workmanship or material, waived the provisions of the contract. In our opinion the contention is not well founded. The fact, if it be a fact, that defendant's foreman or superintendent watched the pro-

gress of the work and made no complaint would not be a waiver nor constitute an estoppel. (Monahan v. Fitzgerald, 164 Ill. 525.)

No proposition of law for the court to hold covering this question was presented to the court. We think on the authority of McIntyre v. Sholty, 121 Ill. 660; Mutual Protective League v. McKee, 223 Ill. 364, the defendant is not in a position to urge waiver in this court. The declaration alleged performance of the contract. Under such allegations the plaintiff was not entitled to prove waiver. (Metal Fireproofing Co. v. Boyce, 233 Ill. 284.)

The court found the issues for the defendant. We think the finding of the court was justified by the evidence which tended to show that the plaintiff had not performed its contract. Upon that theory of the case it is unnecessary for us to discuss the question presented by the payment, by the defendant, of the Meacham & Wright cement bill incurred by the plaintiff. Upon the evidence the plaintiff was not entitled to recover in the case independent of any items of recoupment, of which the Meacham & Wright bill was one. The evidence shows that the plaintiff did not comply with its contract and in consequence of its failure to perform its contract all but 500 yards out of the 8,000 yards of cement laid by it had to be replaced. No proof on the basis of *quantum meruit* for the value of the 500 yards was made. The plaintiff did not attempt to introduce any evidence of what the 500 yards were worth and was consequently not entitled to recover anything, irrespective of the proof of the alleged recoupment.

It is urged that the trial court erred in admitting the evidence of defendant's witnesses Hartwell and Lynch to prove the market value of cement, stone and sand used in relaying the floor and asserted that there was nothing but incompetent evidence before the court as to the market value or cost of the floors as relaid.

Schillinger Bros. Co. v. Thompson-Starrett Co., 171 Ill. App. 319.

The only objection made to the evidence was that the price of material was immaterial under the issues of the case as the plaintiff had complied with the terms of its contract. No objection was made at the time to the evidence on the ground that the witnesses were not qualified to testify concerning the market value of the materials in question. We do not think the court erred in admitting the evidence.

Complaint is also made of the action of the court in refusing to strike out evidence as to the money paid out for labor on the ground that much of the work was done at night, and that for night labor there was an extra charge of one half. There is no evidence in the record however that the defendant paid any of the laborers who worked on this job outside the regular hour's time and a half. And there is evidence that the work done by the defendant in relaying the condemned floors was worth the amount expended by them, namely, $1,018.25. The only evidence in the case as to the price of labor, outside of regular hours, is that of the witness Gumbinger, who said generally the price of labor beyond regular hours is time and a half. Assuming however that there was evidence to show that defendant paid more for night labor than for day labor there is no perceptible reason why it was not entitled to use night labor in an endeavor to replace the plaintiff's work as soon as possible, inasmuch as plaintiff had had time and opportunity to lay the floors in accordance with the contract. The question is however immaterial as the plaintiff failed to maintain its case as above stated.

We find no material error of the court in its holdings on the proposition of law submitted by the plaintiff.

Finding no material error in the record the judgment of the trial court is affirmed.

*Affirmed.*