Andrew Voisard and Georgia Voisard, Plaintiffs-Appellees, v. County of Lake, a Body Politic, and Thomas J. Moran, State's Attorney, in and for the County of Lake, State of Illinois, Defendants-Appellants, Clifford Johnson, Elinor R. Johnson, Samuel L. Faraone and Kathryn Faraone, Intervenors-Appellants.

Gen. No. 11,340.

Second District, Second Division.

November 1, 1960.

Bruno W. Stanczak, State's Attorney, Waukegan, Stanley Grosshandler, Assistant State's Attorney, and Jacob Bloom and J. E. Bairstow, of Waukegan, for appellants.

McClory, Bairstow and Anderson, of Waukegan, for appellees.

SPIVEY, J.

This appeal from the Circuit Court of Lake County involves a suit for declaratory judgment. The cause was referred to a Special Master for hearing and report. The objections to the Master's report stood as exceptions before the court. The final order and decree was favorable to the plaintiffs.

Plaintiffs' amended complaint alleged inter alia that they were the owners of a certain parcel of real estate in Lake County, Illinois, which was zoned as an R–1 District; that in the month of June, 1957, they commenced the operation of a private school on the premises; that the school offered a general educational curriculum for kindergarten and grades one through three; that the school served the public school district in which the premises is located or a parish or similar local area; that a large number of children had enrolled in the summer session to be conducted during the months of July and August 1958; that the State's Attorney of Lake County had notified plaintiffs to cease their operation as being in violation of the Lake County Zoning Ordinance. The amended complaint prays judgment declaring their operation known as Vernon Oaks Private School to be a school within the meaning of the Zoning Ordinance and for injunctive relief.

Plaintiff, Andrew Voisard, filed his complaint for declaratory judgment on January 15, 1958, following receipt of letter dated January 13, 1958, from the State's Attorney of Lake County ordering him to cease operations of his enterprise in that it was not a school as contemplated by the Lake County Zoning Ordinance.

On January 21, 1958, the defendants County of Lake and Thomas J. Moran, State's Attorney, filed their answer.

A hearing before the Special Master on the issues joined by the complaint and answer commenced on February 27, 1958.

Thereafter, on March 7, 1958, certain other persons were granted leave to intervene. Intervenors filed their separate answer on the same date.

Further hearings before the Special Master were resumed through April 24, 1958.

On May 15, 1958, the plaintiff was granted leave to join Georgia Voisard as an additional party plaintiff and to file their amended complaint.

The amended complaint was identical to the original complaint except there was added thereto a paragraph alleging that the plaintiffs had accepted a large number of applications for a session to be conducted in the months of July and August, 1958.

It appears from the record that the purpose of the amendment was to obtain a declaration as to plaintiffs' prospective operations.

The County of Lake and the intervenors each filed separate answers to the amended complaint and counterclaims for declaratory judgment and injunctive relief. They each by their counterclaims prayed the court to declare that the operation of the Vernon Oaks Private School was not a school within the meaning of the Zoning Ordinance. The relief prayed by the intervenors differs only in that it asks that the declaration be made as to each of the three separate sessions.

■ In addition to the assignments of error herein, the defendants claim that the issues in this cause have become moot by reason of the conclusion of the 1958 summer session and so, this proceeding should be dismissed. It is true that all contemplated acts referred to in the amended complaint have long since been performed and the defendant can reasonably contend that the questions raised in the action for declaratory judgment now cease to exist. "The general rule is that when a reviewing court has notice of facts which show that only moot questions or mere abstract propo-

sitions are involved or where the substantial questions involved in the trial court no longer exist, it will dismiss the appeal or writ of error." People v. Redlich, 402 Ill. 270, 83 N.E.2d 736.

The question of moot issues frequently occurs in this field of litigation and oftentimes the reviewing court is powerless to effectively deal with such causes even though action is indicated. For instance, in Maywood Park Trotting Ass'n, Inc. v. Illinois Harness Racing Commission, 15 Ill.2d 559, 155 N.E.2d 626, the Supreme Court expressed a desire to reverse the cause but was unable because the issues were moot. In that case, the court said, "We recognize the practical difficulty of obtaining an adjudication of the legal rights of the parties involved before the expiration of the annual racing season. However, the task of providing a more expeditious procedure for review of the proceedings . . . does not rest with the judiciary. Relief must be sought before the legislature."

Fundamentally, the same problems exist in this case as existed in Maywood Park Trotting Ass'n, Inc. v. Illinois Harness Racing Commission. From a practical standpoint, judicial review would not be possible during the time consumed in a session of the school. If this cause is in fact moot, it is possible that neither side could ever secure a review of the action of the lower court. Certainly, this is not desirable where, as here, it is a matter of public as well as private interest that the status of this operation be determined.

■ "But when the issue presented is of substantial public interest, a well-recognized exception exists to the general rule that a case which has become moot will be dismissed on appeal. (See cases collected in 132 ALR 1185.) Among the criteria considered in determining the existence of the requisite degree of public interest are the public or private nature of the question presented, the desirability of an authorita-

369

tive determination for the future guidance of public officers and the likelihood of future recurrence of the question." People ex rel. Wallace v. Labrenz, 411 Ill. 618, 104 N.E.2d 769.

■ Applying this exception to the present case, we feel compelled to review this cause even without deciding if the cause is, in fact moot. The County of Lake is a party and we conclude that in this case this exhibits sufficient public interest. That the issues will recur in one form or another unless we hear the cause on the merits is a certainty and so, practically, it is highly desirable that the cause not elude review. Therefore, without deciding that the cause is or is not moot, we find that public interest requires and judicial precedent permits us to examine the actions of the trial court.

The principal contention advanced by the appellants is that the plaintiffs failed to establish as a matter of law and fact that their operation was a school within the meaning of the Lake County Zoning Ordinance.

The Zoning Ordinance in question provides,

### "SECTION 3-R-1 DISTRICT
(5-Acre Residential Tracts)

In R-1 Districts the only uses permitted are:

1. Single family residences, . . .
2. Schools, including parochial and other private schools, teaching a general educational curriculum and serving a public school district, parish, or similar local area, but not including student dormitories and colleges; dancing, music, or nursery schools; or business, trade, vocations, or professional schools.
3. . . .
4. . . .
5. . . . ."

370

Both parties agree that the basic issue is whether or not the plaintiffs have sustained the burden proof in showing that their enterprise is (1) a school, (2) teaching a general educational curriculum and (3) serving a public school district, parish, or similar local area as contemplated by Section 3, R–1–2 of the Lake County Zoning Ordinance.

The plaintiffs Andrew and Georgia Voisard were prior to the commencement of the instant enterprise certified teachers in the public schools of Illinois. In addition to his teaching in a public school, Andrew Voisard for a number of summers had operated a private business enterprise known as the Playmore Day Camp.

The premises in question was improved with a two-story frame residence with bedrooms and kitchen upstairs and two classrooms, hallway and two lavatories downstairs, and a cement block building containing twenty-five hundred square feet divided into two classrooms and two washrooms. Subsequent to its purchase other improvements to its sanitary facilities and playground equipment including an outdoor swimming pool were added.

Prior to the commencement of his operation, Andrew Voisard visited with several of the neighbors about their proposed enterprise. From the evidence as abstracted it is fair to say that he intended to operate a summer day camp.

The Supreme Court of Illinois has on several occasions defined the word "school" as it would apply to tax exemptions under Article 9 of the Constitution of the State of Illinois.

In People ex rel. McCullough v. Deutsche Evangelical Lutherische Jehovah Gemeinde Ungeaenderter Augsburgischer Confession, 249 Ill. 132, 94 N. E. 162, it was said,

371

"A school, within the meaning of the constitutional provisions, is a place where systematic instruction in useful branches is given by methods common to schools and institutions of learning, which would make the place a school in the common acceptation of the word. What are called schools are conducted for teaching dancing, writing, deportment, and other things, which are not schools in the ordinary sense." (Quoted with approval in Turnverein "Lincoln" v. Cook County Board of Appeals, 358 Ill. 135, 192 N. E. 780.)

The Supreme Court in Coyne Electrical School v. Paschen, 12 Ill.2d 387, 146 N.E.2d 73, said,

"On the basis of the foregoing decisions it is manifest that two things are necessary to qualify a private institution for tax exemption as a school. First, a course of study which fits into the general scheme of education founded by the State and supported by public taxation; . . ."

It was said in People ex rel. Brenza v. Turnverein Lincoln, 8 Ill.2d 198, 132 N.E.2d 499, quoting from State v. Northern Vocational Institute, Inc., 232 Minn. 377, 45 N.W.2d 653, "It seems clear from the foregoing that the constitutional tax exemption for private educational institutions was intended to extend only to those private institutions which provide at least some substantial part of the educational training which otherwise would be furnished by the various publicly supported schools, academies, colleges, and seminaries of learning and which, to such extent, thereby lessen the tax burden imposed upon our citizens as the result of our public education system."

In People v. Levisen, 404 Ill. 574, 90 N.E.2d 213, involving a prosecution of parents for not causing their children to attend some public school, it was held that the burden was upon the parents to show that

their children were being taught an adequate course of instruction in the prescribed branches of learning commensurate with the standards prescribed for public schools.

In the tax cases the courts have held that the statute exempting property from taxation must be strictly construed and any debatable question will be resolved in favor of taxation.

However, in construing Zoning Ordinances the opposite attains. In 101 C. J. S., Zoning, Section 127, it is said, "Since zoning laws are in derogation of common law rights to the use of property, . . . , it has been held that they are subject to strict construction in favor of the right of a property owner to the unrestricted use of his property. . . ." See: City of Chicago v. Krema Trucking Co., 337 Ill. App. 662, 86 N.E.2d 431 (abstract).

The term "general educational curriculum" was defined by two experts in the field of education, Charles H. Wilson, Superintendent of Schools of District 108 in Lake County, Illinois, on behalf of the plaintiffs, and W. C. Petty, Superintendent of Schools in Lake County, Illinois, on behalf of the defendants.

Mr. Wilson's definition would encompass fundamental courses covering writing and arithmetic, subject matters of history, mathematics, science, arts and crafts, foreign language, if possible, as well as typing, if possible. As to the time devoted to academic subjects, one-fourth of the two hour day in the kindergarten area, and one-half of the four and one-half hour day in the first grade, in the second and third grades one-half of the five hour day, in the fourth and fifth grades two-thirds of the five hour day, and in the sixth grade three-fourths of the five hour day.

Mr. Petty included in his definition language, arts, social studies, math., fine arts, general and instrumental music, health, practical arts, physical educa-

tion, and assemblies to be taught over a daily period of five hours.

The conduct of plaintiffs' enterprise is discussed in three separate phases by the defendants, The Summer Session of 1957 from June 24 to August 16, 1957, the Spring Session 1958 from January 20 to June 6, 1958, and the Proposed Summer Session 1958 from June 23 to August 12, 1958.

The Summer Session of 1957 was attended by 175 boys and girls between the ages of five and twelve years. A general educational curriculum was offered, however, the record discloses that only a portion of the enrollees participated in one or more of the academic subjects. None of the students were required to participate in all of the academic subjects. The major portion of the session was devoted to a physical education program.

W. C. Petty testified for the defendants, based upon a hypothetical question summarizing Andrew Voisard's testimony as to the conduct of this session, that the activities did not constitute the teaching of a general education curriculum. He further stated that if all of the students had been required to participate in all of the academic subjects commonly taught to students of their grade level that the enterprise would be a school teaching a general education curriculum.

Based upon the evidence before us, we are unable to agree with the findings that the Summer Session of 1957 complied with the Zoning Ordinance. The enterprise was not the teaching of a general educational curriculum as defined by both the plaintiffs' and defendants' experts.

The Spring Session of 1958 was offered to children in kindergarten and grades one through three. Seven children from Wheeling, Illinois, attended this session all being of kindergarten age. The curriculum fol-

lowed included all of the academic subjects offered in Public School District 108, Highland Park, Lake County, Illinois. Darrell Beam, Principal of Braeside School, a public elementary school in District 108, testified that plaintiffs' curriculum was comparable to that of Braeside for comparable grades. He further testified that he had inspected the plaintiffs' institution during the Spring Session of 1958; that he examined the records, equipment and facilities of the school; that he observed the teaching methods; and that in all respects they were better than eighty-five percent of the public schools in Lake County. He, together with Raymond Naegele, Principal of Ravina School, a public elementary school in District 108, stated that kindergarten is taught in all of the public elementary schools in District 108.

The Summer Session of 1958 was to cover the period from June 23 to August 15, 1958. One hundred forty applications for enrollment had been received by the plaintiffs and a teaching staff had been employed.

The curriculum to be offered as evidenced by the testimony of Andrew Voisard and Plaintiffs' Exhibit 14 included art, dramatics, arithmetic, reading, sewing, science, foreign language, handicraft and social studies to be taught on an "integrated or core curriculum." Each child was to be required to participate in this integrated program.

The evidence discloses the nature of a core or integrated curriculum. Briefly, each student must sign up for one of the academic subjects, viz, reading, arithmetic, social studies, a science. That subject is then used as a core and a program involving the other subjects is developed around that core. The students are divided into groups of twenty according to age, mentality and grade level and each group has one teacher and one student teacher. Two and one-half hours each day are devoted to academic subjects.

375

The evidence further discloses the "integrated or core curriculum" is taught in District 108 of the Lake County and other public elementary schools in Lake County.

In the opinion of Charles H. Wilson, plaintiffs' expert, the curriculum and method to be taught in the Summer Session of 1958 offers a general educational curriculum. He further stated in his opinion the core or integrated curriculum method of teaching was superior to the subject matter method. W. C. Petty, defendants' expert, testified to the contrary.

The evidence further reveals according to Mr. Petty that a Board of Education has the right to fix a public school's curriculum, that the Statute law of Illinois does not define a general educational curriculum, and that there is no specific requirement that educational subjects be taught in any particular portion of the required five hour day. He further stated the law required very little in kindergarten and the first three grades other than that the teaching be done in the English language.

We conclude that the findings and order that the plaintiffs' school for the Spring and Summer sessions of 1958 taught or would teach a general educational curriculum were supported by the evidence.

Defendants further contend that plaintiffs have failed to show that their private school serves a public school district, parish or similar local area, in that, the area they serve is not defined by any certain geographical boundaries.

Public school districts and parishes have established boundaries created by a duly constituted body empowered to make that determination.

The School Code, Chap. 122, Ill. Rev. Stat. 1957, recognizes and authorizes the creation of public school districts in one or multiple counties in Illinois. It

would follow that a private school may serve more than one county in Illinois.

■ The Lake County Zoning Ordinance in referring to a "similar local area" contemplates a contiguous area of a size permitted any public school district or parish. We do not construe the Ordinance to mean any particular existing local school district or parish, nor do we feel that it refers to an area of like size to an existing local public school district. The record shows, that in the Summer Session of 1957, the Vernon Oaks Private School served the communities of Highland Park and Deerfield in Lake County and Glencoe in adjoining Cook County, and that the Spring Session of 1958 served the City of Wheeling in Cook County.

The Special Master's findings dated October 22, 1958 and approved by the Circuit Court, held that if the enterprise proposed for the Summer Session of 1958 was and will be conducted in the manner set forth in the record then it, the enterprise, will not violate the provisions of the Lake County Zoning Ordinance.

■ We find that the curriculum for the Spring Session of 1958 is a general educational curriculum and find that this session serves a similar local area as contemplated in the zoning ordinance. Further, we find that if the summer session of 1958 offered the curriculum which was shown by the evidence to have been contemplated by the plaintiffs, and if the summer session of 1958 served the same area as the spring session of 1958 or the summer session of 1957, that the curriculum and area requirements of the ordinance would be satisfied. At the time of the hearing, testimony concerning the 1958 summer session was of a prospective nature. We believe the proof with respect to the prospective 1958 summer session is sufficient to show compliance with Section 3–R–1–2 of the Lake County Zoning Ordinance.

377

Defendants assign as error the Master's reception in evidence of Plaintiffs' Exhibit 14 and the testimony of Andrew Voisard and Charles H. Wilson relating thereto.

■ Defendants are in no position to complain in in this regard. Any objection they might have had was waived when they on direct examination tendered Plaintiffs' Exhibit 14 to their own witness W. C. Petty for examination and testimony relating thereto. Huling v. Century Publishing & Engraving Co., 108 Ill. App. 549, and Moore v. Schoen et al., 313 Ill. App. 367, 40 N.E.2d 562, and cases cited therein.

Certain other technical errors are assigned by the defendants relating to the Master's findings and the Court's final order and decree. We have considered these assignments and find that they are without substantial merit.

We feel compelled to make mention of defendants-appellants' brief and argument. Defendants repeated excoriations of the special Master are uncalled for, and in poor taste, if not contemptuous.

The decree of the Circuit Court of Lake County is affirmed.

Affirmed.

CROW, P. J., concurs.

WRIGHT, J., concurs.