A. H. Sollinger Construction Company, Inc. *et al.*, Plaintiffs-Appellants, *v.* Illinois Building Authority *et al.*, Defendants-Appellees.

(No. 71-125;

Second District—May 24, 1972.

Sidney Z. Karasik, of Chicago, for appellants.

Cummings & Wyman and Pressman & Hartunian, both of Chicago, and Kirkland, Brady, McQueen, Martin & Callahan, of Elgin, for appellees.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Plaintiffs, who entered into a joint venture to act as general contractor for the construction of a building now housing the Appellate Court of Illinois, Second District, brought this action in the Circuit Court of Kane County seeking to recover money allegedly due them under the venture. Their complaint, presenting multiple and alternative theories of recovery, named as defendants the Illinois Building Authority, owner of the building; Lundeen, Hilfinger & Asbury, the architects; and Classic Tile Company, a subcontractor which had laid the brick surface of front and rear courtyards. Trial was by jury and plaintiffs here appeal from an order directing a verdict for Classic Tile at the close of all the evidence, and from a judgment entered on a jury verdict in favor of the Authority and the architects.

The building was accepted by the Authority as substantially completed in August, 1966, subject only to a specific list of items, including the courtyards, to be completed, corrected or repaired. At the same time, final payment of $35,000.00 on the contract price was withheld pending the satisfactory completion of the items on the list and the resolution of claims that had been made by subcontractors and materialmen. Before final settlement was accomplished difficulties arose with the brick surface covering the courtyards. Subsequent to the winter of 1966-1967 it was noted that in many diverse areas the mortar in the joints between the bricks had deteriorated, chipped and fallen out, leaving holes. The Authority notified the architects and the plaintiffs, and the latter, in turn, unsuccessfully sought to have Classic Tile return to correct the work.

Further deterioration occurred during the winter of 1967-1968, and when plaintiffs had done nothing other than to remove the loose mortar, the Authority, after due notification to plaintiffs, and, as permitted under the terms of the contract, employed Western Waterproofing Company, at a cost of $12,225.00, to repair the defective areas. After Western had been employed, and in accordance with the general contract, plaintiffs were notified that they would be "back charged" for the cost of the repair work against the balance due under the contract. The present action followed. In this appeal, plaintiffs principally contend that the trial court erred in directing a verdict for Classic Tile and that the verdict in favor of the Authority and the architects was against the manifest weight of the evidence.

We deem it expedient to first consider the contentions advanced with respect to Classic Tile and the architects, which contentions bring into focus the allegations of plaintiffs' complaint and the proof introduced to sustain them. Count II of the complaint, directed against Classic Tile, alleged, in pertinent part, that the subcontractor had not performed the paving of the courtyard in a workmanlike manner, or in accordance with the specifications in the subcontract; that the fault and responsibility for the defects was that of Classic Tile; and that under the terms of the subcontract Classic Tile was required to indemnify plaintiffs for the back charge incurred because of the former's defective work.

Count III, pleading a cause of action against the architects, alleged, in substance, that the architects had a duty to specify a mortar mix capable of withstanding the elements to which the courtyards would be exposed; that they negligently and carelessly selected a mortar mix which was inadequate for the purpose intended; that they negligently and carelessly failed to prescribe the use of vapor barriers or other devices or techniques which would have prevented the deterioration of the mortar joints; and that as a result of such wrongful conduct plaintiffs had suffered damages in the amount of $50,000.00. The respective answers of the defendants denied the foregoing allegations. Classic Tile also alleged, as an affirmative defense, that it had objected to the use of the mortar mix specified but had been more or less coerced into using it by representatives of the plaintiffs and the architects.

The principal witnesses for plaintiffs were Dean F. Hilfinger, one of the architects who was called as an adverse witness; Albert H. Sollinger, president of one of the construction companies which had entered into the joint venture; and Robert F. Duggan, president of the other joint venturer, whose company supervised the actual construction. Classic Tile and the architects presented no proof whatsoever, while the Authority introduced only certain exhibits and the testimony of David R. McNulty, is regional construction director.

From the record, it appears that the design for the exterior courtyards called for vertical brick walls and brick surfaces and, relative thereto, the architects specified: "* * * all masonry work shall be laid in lime and cement mortar composed of one part Portland cement, two parts lime and seven parts sand * * * In lieu of the lime cement mortar above specified, the contractor shall be permitted to use Medusa, Universal or approved equal prepared mortar." We note that it appears from the record that the prepared mortars are mixed with sand and water at the construction site in proportions as directed by the manufacturer. The base of the courtyards was a four and one-half inch concrete slab poured over gravel, and the method for installing the brick surface was that a

bed of mortar would be placed on the top of the concrete slab, that bricks and half bricks would be set in the mortar bed, and that the space between the bricks would then be filled in, or topped, with mortar to form a joint. When the desired result is achieved, the mortar in the topping unites with the mortar in the bed to form a solid masonry bond. In regard to the latter step in the process, the architects specified that the topping in the mortar joints should be installed to a thickness, or width, of one-half inch.

It should here be noted that brick masons and tile setters, two separate crafts, use different methods in finishing mortar joints. The former use a tool to compress mortar into the space between the bricks and to level it off even with the top of the bricks, making what is called a "tooled joint." Tile setters, on the other hand, use burlap or some similar material to rub the joint, thus creating some pressure on the mortar in the joint and cleaning excess mortar from the surface. This method produces what is termed a "rubbed joint." According to the two witnesses who testified on the subject, a tooled joint is greatly superior to a rubbed joint.

The vertical walls in the courtyards were erected by a mason subcontractor, who used Medusa. April Tile Company was originally engaged to lay the brick surfaces, but, for reasons not shown in the record, April Tile was replaced by Classic Tile. It appears that tile companies, rather than brick masons, were engaged to lay the surfaces due to jurisdictional rules of the labor unions involved. Just who made the selection of Medusa under the options given in the specifications was never made entirely clear, but it was, in any event, being used for the exterior courtyard work when Classic Tile came into the picture. There was testimony that Classic Tile "objected" to Medusa and "preferred not to use it" for the surface work, but that it did so at the insistence of representatives of the plaintiffs and the architects. The record is devoid of proof as to the reason or reasons why Classic Tile objected to and preferred not to use the product.

Proof fairly relating to the issue of whether Classic Tile had been guilty of poor workmanship may be said to have fallen into two classes, namely, direct and circumstantial. In the latter category, for instance, there was testimony that at the outset of the surface paving a representative of the manufacturer of Medusa spent a day at the project to show Classic Tile employees how its product should be mixed. The mortar mixed on this occasion was used in the northeast corner of one of the courtyards and, according to the testimony of Hilfinger, there was and had been no deterioration in that area. Closely related to the latter circumstance, and taking into consideration that not all of the Medusa was mixed at one time, is proof which shows that some of Classic Tile's

work deteriorated while other parts did not. Likewise, of a circumstantial nature, it was shown that Western Waterproofing had done its repair work with Medusa, and that such repair work had not deteriorated, except in some spots where it thinly overlapped the original work of Classic Tile. It is to be noted, also, that Western tooled the joints rather than rubbing them.

■■  In the category of direct proof, Hilfinger testified that an examination made shortly after the deterioration started revealed, in some of the defective areas, that the topping of the joints was one-eighth of an inch or less, rather than the one-half inch specified. According to Hilfinger's further testimony, if the topping is less than one-half inch it will dry out too quickly, preventing cohesion with the mortar in the bed below the joint, and will eventually chip, crack and come out. Along the same lines, McNulty testified that where the topping was but one-eighth of an inch thick the mortar was found to be "egg shell" thin on the top with nothing but sand underneath, and further stated that when topping is not of proper thickness the water in the mortar will evaporate rapidly causing the topping to shrink and to cure improperly. Although he did not say so directly, further testimony of McNulty relative to the sandy conditions found in the mortar joints in the defective areas would, in our opinion, permit a conclusion that the Medusa in such areas had not been properly mixed. This is apparent since the witness also testified that in the other areas of the courtyard laid by Classic Tile the mortar in the joints remained firm and undeteriorated.

■■■  Since the clarifying decision in *Pedrick v. The Peoria and Eastern R.R. Co.*, 37 Ill.2d 494, 510, it has become a basic principle of law in this jurisdiction that it is proper to direct a verdict "* * * only in those cases in which all the evidence, when viewed in its aspects most favorable to the opponent, so overwhelmingly favors [the] movant that no contrary verdict based on that evidence could ever stand." When this rule is applied to the record in this case, we believe it is clear that the trial court was in error when it directed a verdict for Classic Tile. In our opinion, there was more than enough evidence to sustain the allegation of the complaint that Classic Tile had been guilty of improper workmanship, and thus to present an issue of fact to be determined by the jury. Based upon the evidence previously set forth, we believe there were issues of fact created, viz., whether Classic Tile failed to uniformly comply with the specification that the topping was to be one-half inch thick; whether it at times failed to properly prepare the Medusa mix; and whether these failures, in whole or in part, caused the deteriorated areas in the courtyards.

■■  Sollinger, president of one of the plaintiff companies, testified

that Classic Tile had done nothing wrong "that he knew about," and Duggan, president of the other plaintiff company, testified that, "to the best of his knowledge," Classic Tile had followed the directions for mixing Medusa. Classic Tile now contends that such testimony amounted to judicial admissions of its lack of culpability which made the directed verdict proper. We do not agree with this contention. To defeat recovery, a judicial admission by a party which contradicts the allegations of his complaint must be deliberate testimony relating to a concrete fact, and not a matter of opinion, estimate, appearance, inference or uncertain summary. (See: *Huber v. Black and White Cab Co.*, 18 Ill.App.2d 186, 190, 169 A.L.R. 798, 800—801.) In addition, the whole testimony of the party must be considered and evaluated and not just a part of it. (See: *McCormack v. Haan*, 20 Ill.2d 75.) The statements of Sollinger and Duggan relied upon here were clearly qualified and inconclusive, and in our opinion cannot be categorized as judicial admissions fatal to their case. When Duggan was being cross-examined by counsel for the Authority, he stated that it was impossible to ascertain whether there was an excess of sand or just a deterioration of the "material", and further stated that once deterioration had occurred, "you couldn't tell" whether a masonry bond had been formed when the mortar was originally installed. Classic Tile also contends that these answers are judicial admissions that its work was not faulty, but again we cannot agree. To state that it is not possible to say whether a condition existed, is not an admission that the workmanship which preceded the condition was proper workmanship. At best this cross-examination of Duggan created a conflict with the testimony of Hilfinger and McNulty and should have been submitted to and resolved by the jury.

■■■ Keeping in mind the allegations of Count III of the complaint we cannot agree with the plaintiffs' second major contention, viz., that the verdict in favor of the defendant architects was against the manifest weight of the evidence. Jury determinations of factual matters can be set aside by a court of review only when it is clearly satisfied that the determinations were motivated by passion or prejudice or found to be wholly unwarranted from the manifest weight of the evidence, (*Kahn v. James Burton Co.*, 5 Ill.2d 614, 623; *Lau v. West Towns Bus Co.*, 16 Ill.2d 442, 451), and we do not find that either prerequisite exists in this case. Briefly restated, the complaint charged the architects with having negligently failed to specify a mortar fit or adequate for exterior use, and with having negligently failed to specify barriers or techniques which would have prevented deterioration. There was, however, no proof in the trial court, nor is there argument before this court, relative

to the charge that barriers or other devices should have been specified, thus removing the issue from the case.

■■ In our opinion a jury considering the evidence heretofore set forth and discussed could, with reason, find that the Medusa prepared mortar specified was, when properly mixed and applied, suitable for the purpose intended. This would be so whether the mortar joints were to be tooled or rubbed, as is borne out by the evidence that not all of Classic Tile's work deteriorated and by the further evidence that no deterioration had occurred in Medusa which Classic had mixed under the supervision of the Medusa representative.

■■■ Plaintiffs' contention that the verdict in favor of the architects is against the manifest weight of the evidence is mainly centered on an engineering report, referred to in the record as the Flood report, wherein an opinion was expressed that "a higher strength * * * mortar would be necessary to provide the durability for exterior work in this area." However, due to the lack of a proper foundation, this report was never received into evidence, and it necessarily follows that we may not consider it in weighing the evidence from which the jury reached its verdict. From the testimony of Hilfinger it appears that the architects had no prior experience with the use of Medusa for exterior surface work in the Elgin area and this evidence, together with an assertion by plaintiff that "As a matter of common sense the specifications of the same mortar mix for a horizontal brick pavement as for a vertical wall was improper," are advanced as further supporting their claim that the verdict for the architects was against the manifest weight of the evidence. We do not agree with this contention. Plaintiffs had the burden of proving their allegation that the mortar specified was inadequate for exterior use. We cannot agree that either of the circumstances argued by plaintiffs could suffice to sustain that burden. The "common sense" argument, in the state of the record, is no substitute for probative evidence, nor does the fact that the architects had never used Medusa in the locale constitute proof that it was inadequate as charged in the complaint. In this respect, and since an issue of some technicality was involved, we note that the record shows almost a total lack of affirmative evidence on the question of whether the architects had been negligent.

■■ As previously noted there was testimony that a tooled mortar joint is superior to a rubbed joint. By logic not entirely clear, plaintiffs argue that such proof causes the verdict in favor of the architects to be against the manifest weight of the evidence. There was no proof that the architects, as a matter of professional competence, should have specified tooling, and once again there was proof that some of Classic Tile's work,

particularly that accomplished where the mortar was mixed under the supervision of a representative of Medusa, had not deteriorated despite the fact that the joints were rubbed rather than tooled.

■■■ Finally, it is asserted that the architects should not escape liability because they had a representative at the construction project and since they accepted Classic Tile's work. It is sufficient to say that plaintiffs' complaint makes no charge of negligent supervision, and that such an issue cannot be injected into the case for the first time on appeal. (*Woman's Athletic Club v. Hulman*, 31 Ill.2d 449.) Furthermore, the defect in Classic Tile's work was obviously latent and acceptance of work under a building contract will not waive latent defects. *Monahan v. Fitzgerald*, 164 Ill. 525; *Schillinger Bros. Co. v. Thompson-Starrett Co.*, 171 Ill.App. 319.

Since they relate largely to the issues on appeal involving the architects, we shall next consider the contentions of plaintiff that the trial court erred in excluding the Flood report from evidence and in submitting special interrogatories to the jury which had been tendered by the architects. The Flood report, made by the Walter H. Flood & Co., Inc., and signed by Paul E. Flood, was made prior to the start of this litigation and was prepared at the instance of plaintiffs, the Authority and the architects in their efforts to ascertain the cause of the deterioration in the mortar joints. Briefly, it stated that the installation of the Medusa had not been uniform and in accord with best construction practice and, as previously noted, expressed the opinion that mortar of a higher strength should have been specified.

At the trial plaintiffs made no effort to lay a proper foundation by summoning the person who had prepared the report so as to permit him to be subjected to cross-examination, and upon objections of defendants that it was hearsay, the trial court excluded the report from evidence when it was offered by the plaintiffs. (*Cf. Mehochko v. Gold Seal Co.*, 66 Ill.App.2d 54.) Thereafter, however, in what we believe to have been a mistaken reliance upon a doctrine first enunciated in *Darling v. Charleston Hospital*, 33 Ill.2d 326, at 335-336, the court ruled that plaintiffs could inquire into the expertise of the witnesses by the use of the report. As a consequence plaintiff's counsel examined Hilfinger and cross-examined McNulty concerning the report and its contents. Thus, as a practical matter, the contents of the report did come to the attention of the jurors. Plaintiffs' basic complaint is that the report should have been admitted so that the jurors could have had it before them during their deliberations.

■■■ To justify their failure to lay a proper foundation for the introduction of the report, plaintiffs take the position that the agreement

of the owner and architect that the report be obtained is tantamount to a stipulation that the report could be received in evidence in the law suit. No authority is cited in support of this novel theory, and we doubt that any exists. An agreement that an engineering report and investigation should be made cannot be cited as conclusive evidence that there was an agreement that the report was correct or that the report, standing alone, would be competent evidence in any ensuing law suit. Plaintiffs also contend that defendants waived their hearsay objection and caused the report to be admissible, by their conduct of "making extensive use of the report for their own purposes," evidently referring to the circumstances when defense counsel, in questioning witnesses already examined by plaintiffs in regard to the report, made reference to the contents of the report. While there would be substance to plaintiffs' theory of waiver had the defendants tendered the exhibit to their own witnesses on direct examination, (see: *Voisard v. County of Lake*, 27 Ill. App.2d 365, 378), that is not what occurred here. By cross-examining on the report within the confines of the area the court permitted it to be used, defendants did not waive their objection that it was hearsay. *Cf. Chicago City Ry. Co. v. Uhter*, 212 Ill. 174.

■■ Over plaintiffs' objection the trial court submitted two special interrogatories. The first, to which the jury replied "No", inquired: "Did the damage to the courtyard, *if any there be*, result proximately from improper specifications of the defendant, Lundeen, Hilfinger & Asbury?" (emphasis added); the second, answered "Yes", inquired: "Was there some fault of the Plaintiff which proximately contributed to cause the alleged damage?" Plaintiffs contend in this court that both were improper as to form, and that the jury's answers thereto were against the manifest weight of the evidence. In light of plaintiffs' failure to move to set aside the answers to the special interrogatories, or to attack them in its motion for a new trial, the latter contention may be quickly disposed of. It has long been settled that an answer to a special interrogatory is binding on a party unless he attacks it in the trial court, and that a general objection that the verdict is against the manifest weight of the evidence is not sufficient to preserve for review questions going to the propriety of the special finding. *Quagliano v. Johnson*, 100 Ill.App.2d 444; *Westlund v. Kewanee Public Service Co.*, 11 Ill.App.2d 10.

■■ We do observe, however, that, because the first interrogatory had the words, "if any there be" following the reference to "damage to the courtyard," plaintiff insists that it violated the rule that special interrogatories should relate to findings of ultimate fact, as distinguished from evidentiary facts. (See: *Hulke v. International Mfg. Co.*, 14 Ill.App. 2d 5; *Sphatt v. Tulley*, 38 Ill.App.2d 229.) It is true, as plaintiffs argue,

that there was no issue as to whether damage to the courtyard had occurred and that the words relied upon relate to an evidentiary fact. Taken in its entirety, however, the interrogatory did call for a finding as to an ultimate evidentiary issue, and in our opinion the jury was not misled or confused, nor plaintiffs prejudiced, by the isolated phrase upon which plaintiffs rely.

■■■ We also note, as a basis for their attack on the second interrogatory, plaintiffs assert that it was improper because it injected an issue not present in the case. Plaintiffs appear to contend that although their complaint charged the architects with "negligent" and "careless" conduct, there was no issue as to their own contributory negligence or fault. While it may be conceded, as plaintiffs point out, that a special interrogatory which mis-states an issue in the case is improper and should be refused (*Golden v. Big Bear Foods, Inc.*, 102 Ill.App.2d 237), the record shows that plaintiffs pleaded freedom from fault on part of plaintiffs. In arguing their assertion as to the impropriety of the second interrogatory, plaintiffs cite no precedents in support of such assertion nor have we found any precedents which we feel support plaintiffs' views. While we have heretofore indicated that reversal on this ground would not be appropriate for procedural reasons, we likewise find no basis in the record or in precedents for reversal on this issue. Cf. *Deckard v. Joiner*, 44 Ill.2d 412; *Little v. City of Peoria*, 374 Ill. 344.

Turning now to the contention of plaintiffs that the verdict in favor of the Authority, or building owner, was against the manifest weight of the evidence, Count I of the complaint alleged in substance that plaintiffs had followed the plans and specifications of the architects; that any defects in the courtyards arose by reason of improper materials and methods specified by the architects; that some of the deterioration in the mortar joints was due in whole or in part to negligent maintenance on the part of the Authority and to its negligence in having applied erosive chemicals to the surfaces; and that by reason of the foregoing it was unjust and unfair for the Authority to back-charge plaintiffs for the repair work on the courtyard. All of these allegations were denied by the Authority. The prayer of the count was that the Authority be ordered to pay all sums due and owing to plaintiffs. There was no proof of the negligent maintenance charge. We have already concluded that the jury was justified in finding, on the evidence presented, that the architects had not been guilty of specifying improper or inadequate materials. It is unquestioned here that the Authority had the contract right to employ Western Waterproofing to make repairs when plaintiffs failed to do so and to back-charge plaintiffs for the cost of Western's work. Accordingly, and with these issues eliminated, there only remains for us to consider

the charge that the Authority negligently contributed to the deterioration of the mortar by applying erosive chemicals to the surface.

■■ It appears that employees of the Authority shoveled footpaths through the snow in those areas of the courtyards traveled by pedestrians and, if icy conditions prevailed, then they spread salt over the shoveled surfaces. The proof on the issue attained the barest of minimums and, in our opinion, affords no basis for disturbing the jury's verdict. Hilfinger testified that if the Medusa had been properly prepared it would have been impervious to the use of salt, unless the use of salt was excessive and the salt was allowed to remain on the surface for too long a time. There was, however, a total lack of proof that the Authority had been guilty of either practice. Further, we find no support in the record for plaintiffs' claim that the most extensive deterioration occurred in the areas where salt had been applied. Rather, the uncontradicted evidence shows that there was no fixed pattern in the deteriorated areas and that the deterioration was the same in all defective areas.

For reasons stated the judgment of the Circuit Court of Kane County is affirmed as to the defendant Architects and Authority, but its order directing a verdict for Classic Tile and the judgment entered thereon are reversed, and the cause remanded with directions that there be a new trial on the issues between plaintiffs and Classic Tile.

Affirmed in part; reversed in part and remanded with directions.

STOUDER, P. J., and SCOTT, J., concur.