LORRAINE SPIRON, Plaintiff-Appellant, *v.* ALBERT SPIRON, Defendant-Appellee.

(No. 56393;

First District (5th Division)—July 26, 1974.

Philip E. Howard, of Chicago (William J. Harte, of counsel), for appellant.

James J. Hoffnagle, of Chicago (Taylor, Miller, Magner, Sprowl & Hutchings, of counsel), for appellee.

612

Mr. JUSTICE LORENZ delivered the opinion of the court:

Plaintiff filed a two-count complaint for personal injuries alleging in count I defendant's negligence and in count II his willful and wanton misconduct. At the close of plaintiff's case, the trial court granted defendant's motion to strike and dismiss count II, but reserved ruling on defendant's motion for a directed verdict on count I. At the close of all the evidence, defendant submitted the following special interrogatory: "Was the plaintiff before and at the time of the occurrence using ordinary care for her own safety?" The jury answered "No" to the special interrogatory and returned a verdict for plaintiff in the amount of $37,400. Defendant filed a post-trial motion seeking the court to declare the general verdict inconsistent with the special interrogatory. The court denied this motion, but entered judgment *n.o.v.* in favor of defendant holding that plaintiff was guilty of contributory negligence as a matter of law.

On appeal plaintiff contends: (1) that the trial judge erred in overturning the jury verdict and holding plaintiff guilty of contributory negligence as a matter of law; and, alternatively, (2) that the court erred in removing from the jury's consideration the question of defendant's willful and wanton misconduct. Defendant cross-appeals contending that the jury's general verdict is inconsistent with its special finding of fact thereby necessitating the court to enter judgment *n.o.v.* for defendant.

Four witnesses testified at trial with respect to the occurrence. Plaintiff testified that she divorced her husband in July, 1964, and established her residence at 3801 North Odell Avenue with her parents Mr. and Mrs. Schomburg. She was awarded custody of their minor son Kenny while her husband was permitted visitation rights that were to be exercised one day a week on either Saturday or Sunday. On Saturday, April 9, 1966, at approximately 10:00 A.M. defendant called for Kenny. Plaintiff opened the door and Kenny walked out and down the front steps. As defendant turned and followed, plaintiff asked him what time he would bring Kenny home. Defendant did not respond and plaintiff repeated the question. Defendant maintained his silence and continued to walk toward his car parked in front of the house facing north. Plaintiff followed asking defendant again and again, her voice increasingly louder, but still getting no reply. Defendant placed Kenny in the front seat of his car and then entered himself on the driver's side. Plaintiff bent over alongside the driver's side of the car placing her right hand on the door handle and left hand on the side view mirror and continued asking defendant when he would bring Kenny home. Defendant still declined to answer but instead started the engine and began allowing the car to slowly move forward north on Odell. She followed walking alongside the car while bent over so that her lower torso was facing north and her

upper body was twisted toward the car. The speed of the car remained constant, creeping slowly for the length of the neighbor's house. She was now quite agitated and was hollering. As the car reached the house north of her parents, it suddenly and without warning increased its speed. Plaintiff was jerked off balance, her left hand flying off the side view mirror while her right hand grasped the door handle to keep from falling. The acceleration of the car spun her around so that her back was against the car although her right hand remained on the door handle. The next moment she found herself on the street. She only vaguely remembers the ambulance ride to Northwest Hospital and the subsequent events.

On cross-examination plaintiff testified that defendant had always brought Kenny home at the end of the day and that she had no reason to suspect that defendant would harm Kenny. She had no recollection of defendant handing her an envelope when he came to the door or of looking inside any envelope, nor did she know until after the accident that defendant had obtained a court order that allowed him to keep Kenny overnight.

Defendant testified that when he called for Kenny on the day in question, plaintiff answered the door. He handed her an envelope containing the previous week's child-support money and in answer to her question concerning the current week's child-support payment replied that he would have it when he brought Kenny back the next day. He did not explain to plaintiff that he had recently obtained a court order permitting him to keep Kenny overnight. Plaintiff voiced an objection to keeping Kenny overnight and followed defendant out the door and to his car. Defendant placed Kenny in the back seat of the car, climbed in the front seat, locked the doors and raised the windows. Plaintiff stood in front of the car blocking its path, but when he turned on the engine and started to back up, she moved alongside the driver's side pounding on the window and demanding that defendant release Kenny. He started the car forward and she walked along with it, bending over, keeping her right hand on the door handle and pounding on the window with her left hand. She continued her demand to let Kenny out of the car but defendant did not respond. They had traveled three to four houses down from her mother's home when, without a prior warning, he increased the speed of the car. Plaintiff had to trot to keep up with the car. After three quarters of a block, she stopped moving, grabbed the door handle with both hands, and allowed the car to drag her along. He stopped the car immediately and she fell to the ground near the rear tire. She did not drag for more than a foot or so.

Mary Schomburg, plaintiff's mother, testified that on the day of the

accident she was sitting in the living room of her home watching television when defendant arrived. Kenny went out the door and defendant placed him in the car on the passenger's side. Plaintiff followed and stood by the driver's side of the car. It appeared that she was talking to defendant. The car started moving forward slowly and plaintiff was walking alongside it on the driver's side. The witness went out to the porch and called her to come back to the house. The car started moving faster as it passed the second house until it pulled away and she saw her daughter lying on the pavement.

Officer Thomas Swane, the investigating police officer, testified that he was called to 3801 North Odell, and the accident occurred in front of 3815 North Odell. He further testified that plaintiff's mother told him that plaintiff appeared to be hanging onto the door and that the mother hollered three or four times to let go of the car.

OPINION

■■ Plaintiff contends that the trial judge erred in overturning the jury verdict and holding plaintiff guilty of contributory negligence as a matter of law. The standard to be applied for entering judgment *n.o.v.* and for finding that the proof presents no factual question for the jury's consideration is the same, namely, that all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant, that no contrary determination based on that evidence would ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.,* 37 Ill.2d 494, 229 N.E.2d 504; *Baran v. City of Chicago Heights,* 43 Ill.2d 177, 251 N.E.2d 227.) The dispute here is simply the application of this standard to the particular facts of this case.

■■ From the record in this case, it cannot be said that plaintiff's conduct was contributorily negligent as a matter of law. Viewing all the evidence in its aspect most favorable to plaintiff, it cannot be said that defendant has met his burden in demonstrating that plaintiff's actions proximately caused her injuries, and that no contrary conclusion could ever stand. The testimony of plaintiff and plaintiff's mother suggests that the sudden acceleration of defendant's automobile, without warning, caused plaintiff to fall and injure herself. Plaintiff testified that the sudden acceleration spun her around so that her back was against the car. She hollered for defendant to stop and the next thing she remembered was that she was lying in the street. Plaintiff's mother testified that her daughter was walking alongside the car when it started to go faster and pull away. She next saw her daughter lying on the street. Defendant admits to having increased the speed of the car without warning, but denies that this sudden acceleration caused plaintiff to fall. It was his testimony that she was forced to trot when he increased the speed of the

car, that she started to grab for the side view mirror as she was falling, but then grabbed onto the door handle with both hands and allowed herself to be dragged by the car. He immediately stopped the car and she fell to the ground. He indicated that she was carried by the car not more than a foot.

The investigating police officer's testimony does not substantiate either version. His accident report only indicates that plaintiff's mother thought her daughter was hanging onto the door and that the mother called to her daughter to let go. Considering all the evidence presented, it cannot be said that the evidence when viewed most favorably to plaintiff overwhelmingly supports a conclusion that plaintiff's actions proximately caused this accident. The trial court therefore erred in entering judgment *n.o.v.*, holding plaintiff guilty of contributory negligence as a matter of law.

■■ However, defendant contends that the jury's answer "No" to the special interrogatory: "Was the plaintiff before and at the time of the occurrence using ordinary care for her own safety?" required that judgment be entered in favor of defendant. Defendant argues that the jury's answer is a finding of plaintiff's contributory negligence, that, as such, it is inconsistent with the general verdict and therefore required the judgment *n.o.v.* We find no merit in this contention. It is well settled that contributory negligence requires the finding that: (1) plaintiff's conduct was negligent, and (2) that the negligence proximately caused plaintiff's injuries. (*Buehler v. White*, 337 Ill.App. 18, 85 N.E.2d 203.) The special interrogatory did not address itself to the second element, *i.e.*, the question of the proximate cause of the injury.

■■ Nor can defendant claim that the failure of plaintiff to object to the deficiency in the special interrogatory when it was given forecloses his claim now that the jury's answer does not control the general verdict. The responsibility for the incomplete special interrogatory must fall on defendant. (*Debolt v. Wallace*, 56 Ill.App.2d 380, 206 N.E.2d 469.) Since the jury's answer cannot be said to be inconsistent with its general verdict, the special interrogatory is not controlling.

■■ We have reviewed the record and find that the evidence supports the jury's general verdict. Therefore, since the special interrogatory is not controlling and because plaintiff was not guilty of contributory negligence as a matter of law, judgment should have been entered on the jury's general verdict. In light of this conclusion, it is unnecessary to consider plaintiff's other contention. The judgment is reversed and the cause remanded with directions to enter judgment on the verdict of the jury.

Reversed and remanded, with directions.

DRUCKER and BARRETT, JJ., concur.