RUSSELL RODDY, JR., *et al.*, Plaintiffs-Appellants, *v.* CHICAGO AND NORTHWESTERN RAILROAD, Defendant-Appellee.

First District (2nd Division)   No. 61146

Opinion filed April 26, 1977.

John L. Martin, of Chicago (William J. Harte and Martin Healy, Jr., of counsel), for appellants.

Menk, Bishop and Kezelis, of Chicago (Ronald T. Bishop and John T. Mehigan, of counsel), for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Plaintiff co-administrators (hereinafter referred to collectively as plaintiff) brought this action for the wrongful death of their son in a vehicular collision. A jury returned a general verdict in favor of defendant and responded affirmatively to a special interrogatory which found that the conduct of the decedent proximately contributed to cause the occurrence in question. Judgment was entered by the trial court upon the verdict. A post-trial motion for judgment notwithstanding the verdict or, in the alternative, for a new trial was denied. Plaintiff brings this appeal.

On December 22, 1970, between 8:30 and 9 a.m., defendant's employee, Albert F. Kline, was driving a 4¼-ton flatbed truck on Bypass Route 14 in McHenry County, proceeding westbound toward Dean Street. The roadway of Bypass 14 was variously described as "wet", "icy", and "covered with hoarfrost." Bypass 14 is a road with one lane in either direction at the Dean Street intersection. The lanes are separated by a center dividing line. As Kline proceeded west on Bypass 14, uphill, he noticed that he was closing on a white Ford automobile which was being driven by Carroll Robertshaw. Robertshaw testified that he was slowing down to make a right turn at Dean Street but that he was not sure if he signalled his intention to turn. Kline's passenger, Patrick Dobson, related that he did not see any turn signal from the white Ford but that he did see the brake lights of the Ford light up. There was conflicting testimony as to Kline's distance from the Robertshaw car. Kline testified he was 12 car lengths behind Robertshaw's vehicle when the latter's brakes were first applied. Dobson testified the distance was approximately four car lengths. Kline testified that his speed was between 52 and 55 miles per hour. The legal speed for trucks such as that driven by Kline was 50 miles per hour at the time and place in question. Ill. Rev. Stat. 1969, ch. 95½, par. 11—601(e).

As he was gaining on the Robertshaw car, Kline applied his brakes causing the rear of his truck to swerve into the eastbound lane of Bypass 14. Kline slowed to about 40 miles per hour, regained control and, within four or five seconds, was again in the westbound lane. Again, Kline's truck started to close on the Robertshaw car. This time, he "fluttered" his brakes. The truck skidded, placing the front of the truck into the eastbound lane. Saying to himself "My God, a head-on collision," Kline "slammed" his brakes and turned to the right. As a result, the rear of his truck crossed over to the eastbound lane. The truck slid for four or five seconds before impact.

Kline testified that when he was three-quarters of a mile from the approaching eastbound car driven by plaintiff's decedent, he thought it was moving at 60 miles per hour. The speed limit for automobiles at the time and place in question was 65 miles per hour. Kline lost sight of decedent car at a distance of 200 to 400 feet and was unable to estimate its speed thereafter. Decedent's car collided with Kline's truck in the eastbound lane about 100 feet east of the Dean Street intersection. The impact caused damage to the right rear of Kline's truck. No skid marks attributable to plaintiff's decedent's car were found at the scene of the collision, but treadmarks from his car were observed in slush on the shoulder to the right of the eastbound lane.

Several witnesses testified that at the top of a hill about three-quarters of a mile west of the point of collision, plaintiff's decedent passed a slow-moving vehicle with a flashing yellow light, apparently a snow-plow, using the westbound lane as a passing lane. No testimony was offered as to whether the center dividing line at that point would permit or prohibit such a maneuver.

At trial defense counsel read to the jury, over plaintiff's objection, National Safety Council data relative to average stopping distances of automobiles (standard size) moving at 60, 65, and 70 miles per hour on dry, flat pavement. No evidence had been offered at trial relative to this matter nor did any expert testify to the underlying foundation for this matter. The trial court ruled the statistics were admissible evidence as "official publications."

Decedent regularly left for work at 8 a.m. Personnel records at decedent's place of business revealed that decedent was always credited with 40 hours of work per week. A spokesman for the business for which decedent had worked, one Christopher Julsrud, testified that his superior had told him that working hours for all employees, and presumably decedent, in 1973 were 8 a.m. to 4:30 p.m. On cross-examination, it was brought out that Julsrud was not employed by the business in December of 1970, when the accident occurred. This testimony was challenged on the ground that it was hearsay. The objection was overruled. At closing argument, defense counsel argued that decedent was contributorily negligent because he must have been speeding to get to work. This inference arises since decedent left home at 8 a.m. when he was due on the job at that time.

Plaintiff's motion for a directed verdict made at the close of all the evidence was denied and the jury returned a general verdict in favor of defendant. It also responded affirmatively to the special interrogatory, submitted over plaintiff's objection, which read "Did the conduct of the decedent proximately contribute to cause the occurrence in question?"

The issues raised on appeal are as follows: (1) whether the trial court

improperly denied plaintiff's motions for a directed verdict on the issues of defendant's liability, or alternatively, improperly denied directed findings on the issues of defendant's negligence and plaintiff's decedent's freedom from contributory negligence; (2) whether the trial court erred in admitting hearsay testimony over plaintiff's objection on two occasions; (3) whether the trial court erred in giving a special interrogatory which made no reference to contributory negligence of plaintiff's decedent; and (4) whether the verdict for defendant is against the manifest weight of the evidence.

■■ Plaintiff contends the trial court improperly denied his motion for directed verdict on the issue of defendant's liability, or alternatively, improperly denied his motions for directed findings on the issues of defendant's liability and plaintiff's decedent's freedom from contributory negligence. The standard for determining the propriety of directed verdicts, as well as judgments notwithstanding the verdict, was enunciated by our Supreme Court in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14. The standard is whether "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

■■ We first consider whether the trial court should have directed a finding on the issue of defendant's negligence. Plaintiff argues that defendant was guilty of negligence as a matter of law. We think the evidence, viewed in its aspect most favorable to defendant, supports this contention. The collision occurred in the eastbound lane, plaintiff's decedent's proper driving lane. In the absence of explanation to the contrary, the fact that defendant's vehicle skidded into the opposing lane of traffic must be deemed to have arisen from defendant's negligent act or omission. (*Calvetti v. Seipp* (1967), 37 Ill. 2d 596, 598, 227 N.E.2d 758, 760.) Defendant testified he "fluttered" his brakes because he wanted to keep a certain distance from the white Ford ahead of him. This is insufficient to overcome the presumption of negligence as stated in *Calvetti.* Defendant was aware that the road surface was slippery and that his braking had been causing him difficulty in keeping his truck under control. He knew that the white Ford ahead of him had been slowing down. Under the circumstances, defendant was negligent as a matter of law in failing to slow his vehicle to a speed which would enable him to brake without swerving into the opposing lane of traffic.

■■ On the other hand, we do not think a finding of freedom from contributory negligence could be directed where, as here, reasonable inferences from the evidence could show that plaintiff's decedent was traveling 60 miles per hour on wet, frosty pavement, that plaintiff's decedent failed to brake within 200 feet of the truck which obstructed his

line of traffic, and that three-quarters of a mile earlier plaintiff's decedent crossed the center line at the top of a hill to pass a slow-moving vehicle. The evidence, viewed in its aspect most favorable to defendant as required by *Pedrick*, does not so overwhelmingly favor plaintiff on this issue that no contrary verdict could ever stand.

In summary, we hold the trial court did not err in denying plaintiff's motion for directed verdict on the issue of defendant's liability. However, it was error for the court not to direct a finding on the issue of defendant's negligence.

■■ Further, during defendant's case, defense counsel, without any foundation, read from Bulletin No. 22 of the National Safety Council, the stopping distances of a standard size automobile. This bulletin was never qualified for use by the defendant. Its use was a violation of the hearsay rule of evidence and was appropriately objected to by plaintiff as hearsay.

The issue here is whether the manual in question qualifies as a learned treatise whose authoritative nature was established. The record in this case is devoid of any information concerning the identity of the author of the bulletin or his qualifications. One of the primary factors bearing on the accuracy and reliability of a bulletin of this nature is the qualifications of its author or authors within that author's particular profession. (See 6 Wigmore, Evidence, §1694, at 12 (Chadbourn rev. ed. 1976).) Additionally, the burden of proving that the text is authoritative is on the party seeking to admit the text. *People v. Behnke* (1976), 41 Ill. App. 3d 276, 353 N.E.2d 684.

Here, there was no attempt to lay a foundation for this hearsay material. Thus, practically speaking, the court allowed the contents of the bulletin, unreliable information relating directly to an issue central to the question of contributory negligence, to come to the attention of the jurors. (*Cf. A. H. Sollinger Construction Co. v. Illinois Building Authority* (1972), 5 Ill. App. 3d 554, 283 N.E.2d 508.) It is this category of technical evidence which is apt to overly impress an unwary jury by the mere fact that it was published by the National Safety Council.

The bulletin used by the defendant was not established as a learned treatise nor was its value as an authoritative source proven. The bulletin was inadmissible hearsay and in a jury trial, as we have here, its use was reversible error.

■■ We also hold that the testimony of defendant's witness, Julsrud, which was based on Julsrud's telephone conversations with another of defendant's employees, was inadmissible hearsay and does not come within the business record exception to the hearsay rule. See McCormick, Evidence §10, at 22 (2d ed. 1972); *Western Electric Co. v. Bauer Brothers Construction Co.* (1971), 131 Ill. App. 2d 1028, 268 N.E.2d 445.

■■ Plaintiff next maintains the trial court erred in submitting to the

jury the following interrogatory: "Did the conduct of the decedent proximately contribute to cause the occurrence in question?" Contributory negligence requires a finding that plaintiff's conduct was negligent and that the negligence proximately caused plaintiff's injuries. (*Spiron v. Spiron* (1974), 21 Ill. App. 3d 610, 316 N.E.2d 265.) The special interrogatory here was inadequate because it did not require that plaintiff's conduct amount to negligence. Although the jury was also instructed that "It was the duty of the decedent, before and at the time of the occurrence to use ordinary care for his own safety, and that, [t]his means it was the duty of the decedent to be free from contributory negligence," we believe the interrogatory as propounded may have confused the jury. The jury may have interpreted the interrogatory to mean that decedent's conduct in merely being present at the scene of the accident contributed to cause the accident and was therefore contributory negligence. Because the special interrogatory omitted reference to contributory negligence, the jury's affirmative answer to it is not controlling. It was error to submit the interrogatory to the jury.

In view of the several errors committed at trial, we reverse the judgment of the circuit court and remand for a new trial. Under this disposition of the cause, we need not decide if the verdict in favor of defendant is against the manifest weight of the evidence.

Reversed and remanded.

JIGANTI and PERLIN*, JJ., concur.

---

\* At the time of oral argument of this case Justice John C. Hayes sat with Justices Stamos and Jiganti. Subsequently Justice Hayes died. Since that time Justice Perlin was designated the third member of the panel and has listened to the tape of the oral argument, and has read the briefs and the record.