TOM OLESKER'S EXCITING WORLD OF FASHION, INC., Plaintiff-Appellant, *v.* DUN & BRADSTREET, INC., Defendant-Appellee.

First District (1st Division)   No. 78-910

Opinion filed April 23, 1979.

Foos, Meyer & Jacobs, Ltd., and Gary E. Dienstag, of Haas & Dienstag, Ltd., both of Chicago, for appellant.

Don H. Reuben, Lawrence Gunnels, and Philip C. Stahl, all of Reuben & Proctor, of Chicago, for appellee.

Mr. JUSTICE McGLOON delivered the opinion of the court:

This is an action for libel arising out of an alleged false credit report concerning the plaintiff, Tom Olesker's Exciting World of Fashion, Inc., and prepared by the defendant, Dun & Bradstreet, Inc. Pursuant to

defendant's motion, the trial court granted summary judgment and ruled that the cause was barred by the statute of limitations. This ruling was premised on an alleged admission in a deposition given by one of plaintiff's officers concerning the discovery date of the credit report.

Plaintiff now appeals from the summary judgment order and contends that the trial court erred in its ruling because a genuine issue of fact existed concerning the date on which plaintiff learned of the alleged defamatory report.

We affirm.

The instant case has a lengthy history in the Illinois courts. On March 3, 1970, plaintiff filed a three-count complaint against the defendant. Count I alleged a malicious publication of the allegedly libelous report and count II alleged negligence in the preparation and publication of the report. The third count of the complaint was premised on the theory of interference with contractual relations. Pursuant to defendant's motion, the trial court dismissed all three counts of the complaint. On appeal to this court, we affirmed the trial court's dismissal of counts I and II of the complaint, but reversed that part of the order dismissing count III. As to counts I and II, we reasoned that the one-year statute of limitations began to run from the date of publication and that since the complaint was filed more than one year from that date, counts I and II were barred by the statute of limitations. As to count III, we held that the five-year statute of limitations was applicable. (See 16 Ill. App. 3d 709, 306 N.E.2d 549.) Our decision was appealed to the Illinois Supreme Court which, in a landmark decision, held that plaintiff's cause of action did not accrue until plaintiff knew or reasonably should have known of the defamatory report and reversed our decision as to counts I and II. The supreme court affirmed our decision as to count III. Having thus adopted the "discovery rule," the supreme court remanded the cause to the trial court for further proceedings. See 61 Ill. 2d 129, 334 N.E.2d 160.

After remandment, Mr. Tom Olesker, Sr., the president of the plaintiff corporation, was produced for a deposition. At that discovery deposition, Mr. Olesker, Sr., was asked if in 1969 he was informed that he would not receive a shipment of clothing. When Mr. Olesker, Sr., responded in the affirmative and indicated that the first such time was in January or the beginning of February of 1969, the following questions were asked and answers were given:

"Q. January or February?

A. Yes.

Q. Of 1969?

A. Could have, that's right.

Q. All right, from what manufacturer was this order suppose to come?

A. The manufacturer was Martil Clothing Company M-a-r-t-i-l.

Q. M-a-r-t-i-l?

A. Uh huh.

Q. Where are they located?

A. The Philadelphia area. I can't give you the address, but if you want it—

Q. You placed an order for a shipment of clothing?

A. Right, men's suits.

* * *

Q. And you say thereafter that you were refused shipment of that order?

A. Yes.

Q. By whom?

A. By the boss, himself, Mr. Mort Aronson, A-r-o-n-s-o-n.

Q. How did he notify you of that?

A. Through the telephone.

Q. He called you to tell you that?

A. Right.

Q. That he was not shipping?

A. Right.

Q. Did he say why?

A. Yes.

Q. Why did he say?

A. He said his credit man looked my Dun & Bradstreet report over and said—he said, 'Have you seen it, Tom, do you know how bad it is?'

I said, 'I don't know how bad it is. I never saw it. As a matter of fact I don't know where the heck it came from. I never gave them anything.'

Q. What else did he say?

A. He said, 'Under these circumstances, Tom, you can understand that I can't,' you know, and naturally now this again I got a little loud, and I said, 'Would you do me a favor, Mort, and send me the report,' because naturally I wanted to see what was happening, and he said 'Okay,' and he sent me the report, and I looked at it, and he—

* * *

A. Yes.

Q. And Mr. Aronson mailed [the report] to you?

A. That is a copy of the report.

Q. I understand, of course, and you received it here in Chicago?

A. Right.

Q. In January or February of 1969?

A. Un huh."

Mr. Olesker, Sr., went on to testify that after his original discovery of the credit report, 15 additional manufacturers refused to ship him orders. In May or June of 1969, a manufacturer's representative, Mr. Goldberg, visited the store and presented him with a copy of the credit report. Several weeks after receiving this second copy of the report, Mr. Olesker, Sr., visited his attorney. Mr. Olesker, Sr., related to his attorney his conversation with Mr. Aronson, showed him a copy of the report, and identified certain portions of the report which he felt were inaccurate. Mr. Olesker, Sr., then indicated his desire to file a lawsuit. Suit was filed on March 3, 1970.

At the conclusion of Mr. Olesker, Sr.'s deposition, the following discussion took place between the parties' attorneys:

"PLAINTIFF'S ATTORNEY: Okay, I'll tell you what. We'll quit here and call it a day.

DEFENDANT'S ATTORNEY: I don't think this will take any more than ten minutes.

PLAINTIFF'S ATTORNEY: I told you before, I was leaving at a quarter of.

DEFENDANT'S ATTORNEY: I wanted to start at 10:00 this morning.

PLAINTIFF'S ATTORNEY: Mr. Gunnels, we're not putting up any complaint about coming back. I will confer with you next week, and we will continue the deposition. I just have other appointments.

Mr. Olesker and I, we all live in the City and it is convenient to come back."

The deposition was then adjourned *sine die*.

Shortly thereafter, plaintiff's attorney wrote defendant's attorney requesting a mutually convenient date for the conclusion of Mr. Olesker, Sr.'s deposition. The defendant did not respond to this letter and instead moved to strike and dismiss the complaint on the basis that Tom Olesker, Sr., had admitted first learning of the report in January or February, 1969, and that the suit was barred by the statute of limitations. Defendant further alleged that plaintiff had perpetrated a fraud upon the court and asked for attorney's fees pursuant to section 41 of the Civil Practice Act. Ill. Rev. Stat. 1977, ch. 110, par. 41.

After the above motions were filed, defendant's attorney notified plaintiff's attorney that he did not wish to examine Tom Olesker, Sr., any further. Defendant's attorney then filed Tom Olesker, Sr.'s deposition even though it was unsigned by the deponent. Plaintiff then filed a motion to suppress the deposition and an answer to defendant's motion to

dismiss. That answer alleged in part that Tom Olesker, Sr., was mistaken when he testified as to the date on which he discovered the credit report. Attached to the answer were the affidavits of Tom Olesker, Sr., and Tom Olesker, Jr. Tom Olesker, Sr.'s affidavit stated that his first knowledge of the defamatory report was actually in late March or April, 1969, when he was notified by Mort Aronson. His affidavit further stated that he testified in his deposition that his first knowledge was in January or February, 1969, because he "was nervous and genuinely made a mistake as to the date." Mr. Olesker, Sr.'s affidavit concluded stating that his testimony that he contacted his attorney in May or June, 1969, was also in error and that he actually contacted his attorney in February of 1970.

In his affidavit Tom Olesker, Jr., an officer and 50% shareholder in plaintiff corporation, stated that he had followed the litigation closely since its inception; that he was present during the preparation for the deposition in question and that during such preparation his father Tom Olesker, Sr., told his attorney that his first knowledge of the report occurred in late March or April, 1969; that his father had made a mistake in the deposition in testifying that his first knowledge was in fact January or February, 1969; and that his father's conversation with Mort Aronson took place in late March or early April, 1969.

After a hearing, the trial court denied plaintiff's motion to suppress the discovery deposition of Tom Olesker, Sr. The court further allowed a motion by defendant to redesignate its motion as one for summary judgment.

Before ruling on defendant's motion, the trial court ordered the taking of Tom Olesker, Jr.'s discovery deposition. At his deposition, Mr. Olesker, Jr., indicated that the corporation had placed an order with Martil Clothing Co. in October of 1968 and that he spoke to Mr. Aronson of Martil Clothing Co. by phone at the end of February or the beginning of March of 1969. During that conversation, Mr. Aronson suggested that the Oleskers stop at his office in Philadelphia to do their buying on their way to a convention in New York which occurred in mid-March of 1969. Nothing was said about Dun & Bradstreet at that time. Mr. Olesker, Jr., went on to testify that neither he nor his father saw the credit report until April of 1969 when they heard from Mr. Aronson. This occurred two weeks after they returned from the convention. Mr. Olesker, Jr., also indicated that no orders were turned down for credit reasons prior to March 31, 1969.

Mr. Olesker, Jr., indicated that his father's testimony was inaccurate and explained that at the time of his deposition his father was not in good health, that his father was aware he was not as mentally alert as in the past, and that after his father's deposition was concluded, his father was concerned that he had made several mistakes in his testimony.

■■ Plaintiff argues that the trial court erred in granting summary judgment and directs our attention to the well established principles that summary judgment should be free from doubt (*Sarelas v. Law Bulletin Publishing Co.* (1969), 115 Ill. App. 2d 205, 253 N.E.2d 168) and that if the pleadings, affidavits and exhibits show that there is a genuine issue as to any material fact, summary judgment must not be granted. (*American National Bank & Trust Co. v. Lembessis* (1969), 116 Ill. App. 2d 5, 253 N.E.2d 126.) While we recognize the above principles, we must point out that summary judgment is a procedure to be encouraged (*Donart v. Board of Governors* (1976), 39 Ill. App. 3d 484, 349 N.E.2d 486), and one which can avoid the expense of unnecessary trial and ease congestion on the trial calendar. (*Elm Lawn Cemetery Co. v. City of Northlake* (1968), 94 Ill. App. 2d 387, 237 N.E.2d 345.) It is with all of the above in mind that we review the propriety of the trial court's summary judgment order.

Noting that its attorney never examined Mr. Olesker, Sr., during his discovery deposition and that the deposition was adjourned *sine die*, plaintiff concludes that the deposition was incomplete. Plaintiff argues that the trial court could thus consider other evidentiary matters, such as the affidavits and deposition of Tom Olesker, Jr., to clarify his testimony and that these additional evidentiary matters created a genuine issue of fact concerning the date on which the plaintiff discovered the alleged defamatory credit report.

Although the record clearly reflects that Tom Olesker, Sr., was never examined by his own attorney at the deposition, with equal clarity the record reflects that he was given the opportunity to clarify his testimony. Mr. Olesker, Sr.'s affidavit explaining his deposition testimony was presented in response to defendant's summary judgment motion. The trial court denied defendant's motion to strike that affidavit and considered that affidavit as follows in granting the motion for summary judgment: "I don't see how that affidavit helps him at all. It doesn't clarify his deposition. It doesn't cast doubt on anything that he says." As we view Mr. Olesker, Sr.'s deposition, we must conclude that there is no way to clarify his unequivocal statement that he first learned of the allegedly libelous report in late January or early February of 1969.

■■■ In addition, we fail to see how the deposition or affidavit of Tom Olesker, Jr., would change the result in this case. Once a party makes a judicial admission adverse to his or her claim, that party cannot contradict the admission by adopting inconsistent evidence produced by other witnesses. (*Kosin v. Shero* (1977), 45 Ill. App. 3d 1047, 360 N.E.2d 572.) Moreover, as stated in *Fountaine v. Hadlock* (1971), 132 Ill. App. 2d 343, 347, 270 N.E.2d 222, 225:

"It has been held that a counter-affidavit does not place in issue

material facts which had previously been removed from contention by a party's deliberate and unequivocal admissions under oath. (*Burnley v. Moore*, 41 Ill. App. 2d 156, 190 N.E.2d 141; *Meier v. Pocius*, 17 Ill. App. 2d 332, 150 N.E.2d 215.) The policy of the law reflected in that rule, which seems fully applicable to the facts in the instant case, was expressed in *Pocius* as follows (p. 335):

'Plaintiff having sworn, deliberately and repeatedly * * * should not now be invited to commit perjury and change his testimony upon the trial of the case or so reconstruct it as to avoid the consequence of his deposition.' "

■ We are mindful of the fact, as noted in *McCormack v. Haan* (1959), 23 Ill. App. 2d 87, 97, 161 N.E.2d 599, 604, that "the doctrine of judicial admissions * * * requires the most thoughtful study for its sound application lest justice be done on the strength of a chance statement made by a nervous unreflecting party, *Wigmore on Evidence* (3rd ed.), Section 2594a." However, under the instant circumstances, we believe plaintiff is bound by Tom Olesker, Sr.'s statement. Supreme Court Rule 212 provides in part that discovery depositions may be used as an admission made by a party or by an officer or agent of a party in the same manner and to the same extent as any other admission made by that person. (Ill. Rev. Stat. 1977, ch. 110A, par. 212(a)(2). See also *Meier v. Pocius* (1958), 17 Ill. App. 2d 332, 150 N.E.2d 215.) To defeat recovery, a party's judicial admission which contradicts the allegations of his complaint must be deliberate testimony relating to a concrete fact, and not a matter of opinion, estimate, appearance, inference or uncertain summary. (*A. H. Sollinger Construction Co. v. Illinois Building Authority* (1972), 5 Ill. App. 3d 554, 283 N.E.2d 508.) As stated in *Haskell v. Siegmund* (1960), 28 Ill. App. 2d 1, 11, 170 N.E.2d 393, 398:

"There may be cases in which admissions at pre-trial depositions are so deliberate, detailed, and unequivocal, as to matters within the party's personal knowledge, that they will conclusively bind the party-deponent, and he will not be heard to contradict the admissions at the trial. See, for example, Meier v. Pocius, 17 Ill. App. 2d 332, 335, 150 N.E.2d 215, 216-217 (1st Dist. 1958); see also 4 Wigmore on Evidence, secs. 1063-1067 (3rd ed. 1940)."

■ After reviewing Mr. Olesker, Sr.'s deposition testimony concerning the date on which he discovered the allegedly libelous report, we find that testimony to be unequivocal and deliberate. There was no indication that Mr. Olesker, Sr., was confused when he testified. Moreover, his testimony concerning the circumstances surrounding how and when he first learned of the credit report is specific and lengthy. In addition, the date on which Mr. Olesker, Sr., first discovered the report was certainly an item within

his personal knowledge. We conclude that the trial court did not err in finding that plaintiff was bound by that statement and in entering summary judgment in defendant's favor.

■■ Plaintiff raises the additional point that the deposition was not signed by Mr. Olesker, Sr. Nowhere, however, does plaintiff contend that any of the excerpts from that deposition are inaccurate. Viewed in that posture, the absence of Mr. Olesker, Sr.'s signature is an omission without any substantive significance. See *Fountaine v. Hadlock* (1971), 132 Ill. App. 2d 343, 270 N.E.2d 222.

For the foregoing reasons, the decision of the circuit court of Cook County is affirmed.

Order affirmed.

GOLDBERG, P. J., and CAMPBELL, J., concur.