LINDBERG  THOMAS  *et*  *al.*,  Plaintiffs-Appellants,  v.  HOWARD
NORTHINGTON, Defendant-Appellee.

First District (1st Division)   No. 84—1485

Opinion filed May 24, 1985.

Gregory R. Sun, of Chicago, for appellants.

Garbutt & Jacobson, Associated, of Chicago (Richard S. Zenz, of counsel), for appellee.

JUSTICE LORENZ delivered the opinion of the court:

This appeal arises from a collision of defendant's semitrailer truck and the rear end of a car owned and operated by plaintiff Lindberg Thomas, in which Elizabeth King and Alvin Schruggsbey were passengers. After a trial by jury, a verdict was returned in favor of defendant and against all plaintiffs. On appeal, plaintiffs contend that the trial court erred in denying their post-trial motion for a judgment notwithstanding the verdict, or alternatively, for a new trial. We affirm.

Relevant to our disposition are the following. Plaintiffs were injured when the automobile driven by plaintiff Lindberg Thomas was struck in the rear by a semitrailer truck driven by defendant as both vehicles were travelling on a downhill ramp leading to Interstate 57. Lindberg testified that on September 19, 1979, at 12:30 a.m., he had driven his 1970 Pontiac southbound on Halsted Street for approximately three to four miles before turning onto an entrance ramp to

the I-57 expressway; that he first saw defendant's truck behind him as the two vehicles crossed over I-57 just before they both turned onto the 300- 350-foot, 1½-lane-wide ramp; and that he was travelling down the ramp at a speed of 25 miles per hour. Traffic conditions were medium, and the weather was clear and dry. When a car which was about 20 feet in front of him slowed down, Thomas broke his speed and also "slowed down." Defendant's truck, 10 to 15 feet behind him, hit him "pretty hard" from behind, smashing the rear end of his car up to the rear passenger seat, and scattering glass on Mrs. King, the rear-seat passenger. Thomas neither heard a horn nor the screeching of tires. He further testified that his car was in "A-1" shape on September 19, 1979, and that his headlights were working properly. There was $600 damage to his car. Neither of his passengers, Mr. Schruggsbey nor Mrs. King, was able to testify to any details surrounding the collision.

Dr. Mitchell, a chiropractor, was called to testify on behalf of plaintiffs. He testified that all three plaintiffs were treated by his office after the accident, lost time from work, and have bills from him which remain unpaid.

Defendant, testifying on his own behalf, stated that he initially saw the "old" car in which plaintiffs were riding three to four miles north of the entrance ramp, where he noticed that the car, which had no taillights or turn signal, was slowing down, speeding up and slowing down again. He testified that there were only two cars on I-57 just before the accident; that plaintiffs' car, which was five or six feet ahead of him, was proceeding down the ramp at a speed in excess of 20 miles per hour; and that his own speed on the ramp was 15 to 20 miles per hour. Defendant testified that plaintiffs' car made a sudden stop on the entrance ramp, causing an impact of the two vehicles. On cross-examination, defendant stated that his truck was new at the time of the accident; that he at no time attempted to get around or away from plaintiffs' car as he followed it down Halsted; and that there was no possible way that both a truck and car could go down the ramp together (side-by-side). Further, defendant stated that he did see plaintiffs' car come to a complete stop once while he was following it down Halsted Street, and that he did not see any taillight go on at this time; he heard no screeching of tires at the time of the collision.

Finally, Chicago police officer William Storck, testifying for defendant, stated that he was driving to work on I-57 when he witnessed the accident, and that there were only two cars on the expressway at the time, his and another. He saw plaintiffs' car going

down the ramp "very slow"; defendant's truck was following 100 feet behind, and at the same speed. There were no stray animals, holes in the street or any other vehicles in front of plaintiffs' car. Storck was watching the two vehicles on the ramp, because it looked as if defendant would swing his truck into traffic because plaintiffs' car was moving so slowly, and if it did, it would be in Storck's lane. When the truck got to the bottom of the ramp where the curb ended and the ramp accessed the expressway, defendant put his turn signal on. As defendant "looked over" into his side-view mirror, plaintiff "slammed on his brakes." There was no other vehicle in front of plaintiffs when this happened. He further stated that the truck was originally four car lengths behind the car, but that this distance was decreased to two car lengths when the car slammed on its brakes. Following the impact, Storck kept going because he was late for 12:30 a.m. roll call. However, in his rear-view mirror, he saw the truck hit the car, the car lurch forward and both vehicles pull over. Upon his arrival at work, Storck reported the collision; he returned to the scene 15 minutes later.

Closing arguments and jury instructions followed, neither of which is in issue here. The jury rendered its verdict for defendant and against all plaintiffs; the trial court entered judgment on this verdict. In their post-trial motion, plaintiffs moved for judgment *n.o.v.*, or alternatively, for a new trial. Plaintiffs appeal from the trial court's denial of their post-trial motions.

OPINION

■ The initial question raised in this appeal is whether the trial court erred in failing to grant plaintiffs' post-trial motion for judgment *n.o.v.* Plaintiffs assert that because defendant's semitrailer truck rear-ended the car in which they were riding, defendant is negligent as a matter of law, and therefore the lower court should have granted their motion for judgment *n.o.v.* We disagree.

The standard applied in determining whether or not to grant a directed verdict or a judgment *n.o.v.* was set forth in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504:

> "In our judgment verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." 37 Ill. 2d 494, 510.

In the present case, plaintiffs maintain that in rear-end collision cases, there is a generally accepted line of precedent for holding the

driver of the rear vehicle negligent as a matter of law. In support of their position, they cite *Burroughs v. McGinness* (1978), 63 Ill. App. 3d 664, 380 N.E.2d 37, where the court stated:

"In light of general experience and common knowledge, the evidence before us reveals that the defendant was not attentive while driving and therefore, negligent. A driver approaching from the rear has the duty to keep a safe lookout and he must take into consideration the fact that he may be required to stop or slow his vehicle suddenly. [Citations.] Furthermore if he does not maintain a proper lookout for traffic ahead he is negligent. [Citation.]" 63 Ill. App. 3d 664, 667.

Plaintiffs posit that implicit in this duty to keep a safe lookout is a duty to maintain a sufficient distance behind the preceding vehicle in order to stop or slow suddenly if necessary. (See *Hickox v. Erwin* (1981), 101 Ill. App. 3d 585, 588, 428 N.E.2d 520.) They point to the court's opinion in *Burroughs* to suggest that the conduct of the defendant violated these principles and constituted negligence. See also *Zaeh v. Huenke* (1979), 70 Ill. App. 3d 39, 388 N.E.2d 434; *Glenn v. Mosley* (1976), 39 Ill. App. 3d 172, 350 N.E.2d 219.

We find plaintiffs' reliance upon the above-cited cases misplaced, and we choose to rely upon a series of cases where the appellate court held that the fact that a rear-end collision occurs does not automatically establish the liability of the driver of the rear vehicle. See *David v. Black* (1981), 98 Ill. App. 3d 1130, 425 N.E.2d 4; *Dinneen v. Bel-Pack Foods, Inc.* (1980), 87 Ill. App. 3d 878, 410 N.E.2d 235; *Burgdorff v. International Business Machines Corp.* (1979), 74 Ill. App. 3d 158, 392 N.E.2d 183; *Wissmann v. Jedrzejak* (1979), 71 Ill. App. 3d 688, 389 N.E.2d 8.

In determining the law applicable in the instant case, we subscribe to that set forth in *Burgdorff v. International Business Machines Corp.* (1979), 74 Ill. App. 3d 158, 392 N.E.2d 183, wherein the court stated:

"The occurrence of an accident, even where the plaintiff has exercised ordinary care, does not of itself raise any presumption of negligence on the defendant's part. [Citation.] A rear-end collision does not automatically create an inference as a matter of law that the driver of the rear [vehicle] was negligent or that he was following too closely or driving too fast for conditions. It is the responsibility of the trier of fact to determine whether the rear driver, in such accidents, was acting reasonably under the circumstances, or that the accident was unavoidable." 74 Ill. App. 3d 158, 163.

We distinguish the holdings in *Burroughs* and *Glenn v. Mosley* cited by plaintiffs for their contention that defendant's rear-ending of plaintiffs' vehicle constituted negligence as a matter of law.

In *Burroughs*, the defendant testified that he had noticed plaintiff's car from nearly one-half mile away, but could not tell whether the car was moving. The plaintiff's car was in the right-hand lane of the four-lane road, traveling 8 or 10 miles per hour while in the process of making a right turn into a shopping center behind another car. The defendant, who was following at approximately 35 miles per hour, did not begin to brake until 50 to 75 feet from plaintiff's car, and unable to stop, struck the rear end of the car. The *Burroughs* court, in reversing the jury's verdict for the defendant, found "abundant evidence" in the record to establish defendant's negligence, while finding no evidence in the record to support the inference that plaintiff came to a sudden stop. *Burroughs v. McGinniss* (1978), 63 Ill. App. 3d 664, 667-68.

Further, in *Glenn v. Mosley* (1976), 39 Ill. App. 3d 172, 350 N.E.2d 219, although the reviewing court did state that "generally, a party who collides with a stopped vehicle is guilty of negligence as a matter of law" (39 Ill. App. 3d 172, 176), the court's actual holding was a reversal of the trial court's order granting a directed verdict for the defendant and a remandment of the case for a new trial on all issues; the *Mosley* court specifically stated that the question of defendant's negligence should have been submitted to the jury for its due consideration. 39 Ill. App. 3d 172, 175.

In the cases relied upon by plaintiffs, there were no facts present to support any inferences that the involved plaintiffs had stopped suddenly, and in none of these cases were defendants misled by any conduct on the part of plaintiffs which proximately caused the collision. However, in the present case, the evidence is conflicting as to whether plaintiff Thomas slowed down his car so as to avoid traffic ahead of him, or whether he slammed on his brakes for no reason whatsoever.

In the case at bar, there is present a clear question for the jury as to whether defendant's following of plaintiffs' car was an act of negligence (see *Zerbenski v. Tagliarino* (1978), 67 Ill. App. 3d 166, 170, 384 N.E.2d 753) or the proximate cause of plaintiffs' alleged injuries. (See *Doris v. Bradley* (1979), 76 Ill. App. 3d 890, 893, 395 N.E.2d 636.) Questions of negligence, due care and proximate cause are ordinarily questions of fact for a jury to decide, and can become questions of law only when the facts are not only undisputed but are also such that there can be no difference in the judgment of reasonable men as

to the inferences to be drawn from them. (*Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 84, 117 N.E.2d 74.) Diverging inferences appear here, and we cannot say that defendant was negligent as a matter of law.

■ This evidence, viewed in a light most favorable to defendant, shows that plaintiff Thomas made a sudden stop in an unexpected place. Whether plaintiff's conduct was negligent and whether it proximately contributed to the collision were proper questions of fact for the jury. We cannot say that the inferences which might be reasonably drawn from this evidence so overwhelmingly favors the plaintiffs that no contrary verdict could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.) Accordingly, plaintiffs' motion for judgment *n.o.v.* was properly denied.

■ ■ We also reject plaintiffs' contention that defendant's testimony that his truck was five to six feet behind plaintiffs on the ramp constituted a judicial admission of his negligence, and that because of this "admission," we should hold him guilty of negligence as a matter of law.

A judicial admission can be either documentary or testimonial. (*Bishop v. Crowther* (1980), 92 Ill. App. 3d 1, 12, 415 N.E.2d 599.) "To defeat recovery, a judicial admission by a party *** must be deliberate testimony relating to a concrete fact, and not a matter of opinion, estimate, appearance, inference or uncertain summary." (*A. H. Sollinger Construction Co. v. Illinois Building Authority* (1972), 5 Ill. App. 3d 554, 562, 283 N.E.2d 508.) "Before a statement can be held to be a judicial admission it must be given a meaning consistent with the context in which it is found and it must be considered in relation to the other testimony and evidence presented." (*Gauchas v. Chicago Transit Authority* (1965), 57 Ill. App. 2d 396, 401, 206 N.E.2d 752.) We are mindful of the fact that the doctrine of judicial admissions requires thoughtful study for its application so that justice not be done on the strength of a chance statement made by a nervous party. See 9 Wigmore, Evidence sec. 2594a (Chadbourn rev. 1981).

Plaintiffs rely upon *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1979), 71 Ill. App. 3d 562, 390 N.E.2d 60, and *Tennes v. Tennes* (1943), 320 Ill. App. 19, 50 N.E.2d 132, for their proposition that defendant's testimony binds him to the legal conclusion that he was negligent as a matter of law. We find these cases distinguishable. In *Tom Olesker*, a statute of limitations case, a principal made a statement that he discovered defendant's allegedly libelous report on a date which would bar plaintiff's cause of action. Because the date upon which he himself discovered the report was within his

own personal knowledge, plaintiff was bound by this admission. (71 Ill. App. 3d 562, 569-70.) In *Tennes*, the court found that defendant had testified that he went to sleep just prior to an automobile accident—a fact peculiarly within his own knowledge—and found defendant negligent as a matter of law because the record was devoid of any contributory negligence on the part of plaintiff. 320 Ill. App. 19, 33-34.

However, in the case at bar, we believe that defendant, having been asked to estimate the distance between his vehicle and the car in which plaintiffs were riding, did not purport to speak with certitude, and his answer cannot be deemed to be a binding admission. Here, the distance between plaintiffs' car and defendant's truck varies depending upon the witness: five or six feet, 10 to 15 feet or four to five car lengths.

■ Given the conflicts in the testimony of all parties involved, it was still a question of fact for the jury as to whether defendant was negligent in following plaintiffs' car too closely, failing to keep a proper lookout and proceeding at a speed too fast for conditions. It would therefore be erroneous for the trial court to have granted plaintiffs' motion for judgment *n.o.v.*. See *Wolfe v. Whipple* (1969), 112 Ill. App. 2d 255, 262, 251 N.E.2d 77.

■ Plaintiffs also argue in the alternative that, although the evidence may not be so overwhelmingly in their favor to warrant the trial court to enter judgment *n.o.v.*, the judgment was against the manifest weight of the evidence and a new trial should be granted. We disagree. In order for a verdict to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. (*Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 309, 356 N.E.2d 32.) Because the evidence was conflicting and disputed questions of fact were presented, determination of the truth depended upon the jury's evaluation as to the credibility of the witnesses. A review of the evidence indicates that both Officer Storck and defendant testified that plaintiffs' car made a sudden stop on the ramp; Storck testified that there were no cars or obstructions in front of plaintiffs to warrant such an action. Viewing the evidence in its entirety, we cannot say that the trial judge abused his discretion in not setting aside the jury's verdict.

■ We also reject plaintiffs' suggestion that the recent case of *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886, which adopts comparative negligence in Illinois, somehow dictates another result. The *Alvis* court eliminated the total bar to recovery which a plaintiff had faced under contributory negligence and found fairness required that

a plaintiff's damages be reduced by the percentage of fault attributable to him. (85 Ill. 2d 1, 16.) However, the law remains that if the conduct of a defendant is found not to be the proximate cause of the injury, no liability arises. (See *Nunley v. Village of Cahokia* (1983), 115 Ill. App. 3d 208, 214, 450 N.E.2d 363.) We find that the jury properly could have concluded that the plaintiffs' conduct alone was the proximate cause of the collision. The jury was adequately instructed on the concept of comparative negligence, but chose to return a verdict for defendant.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

MEJDA, P.J., and PINCHAM, J., concur.