WALTER H. HANSEN, Plaintiff-Appellant, v. RUBY CONSTRUCTION COMPANY, Defendant (A.M. Kinney & Associates, Inc., Defendant-Appellee).

First District (2nd Division)   No. 86—1059

Opinion filed April 21, 1987.

John M. Falasz, Jr., Ltd., of Chicago, for appellant.

Haskell & Perrin, of Chicago (John J. Lynch and Daniel P. Caswell, of counsel), for appellee.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

Plaintiff-appellant Walter Hansen (Hansen) brought this action seeking to recover damages arising from injuries sustained when he fell from a loading dock designed by defendant-appellee, A.M. Kinney & Associates (Kinney). The trial judge dismissed Ruby Construction Company from this case and it is not a party to this appeal. The circuit court granted Kinney's summary judgment motion. We affirm.

Hansen stated in his discovery deposition that he had been employed by the United States Postal Service for 12 years, but had worked at the branch where he was injured for only several months. He had previously served with that agency at a nearby office, where he also worked on the loading dock.

On the day of the accident, after Hansen noticed a patron he knew, he picked up the patron's mail and walked over toward the edge of the loading dock to hand it to him. Although Hansen had performed this act many times before without incident, on this occasion he fell off the loading dock.

At the taking of his deposition, Mr. Hansen described in detail the rubber bumper strips on which he claimed to have tripped; apparently

their purpose was to prevent hand trucks from rolling off the loading dock. When shown pictures of the dock, however, Hansen was unable to identify the rubber bumpers, explaining that they were beyond the portion of the dock that appeared in the photographs. Nevertheless, Hansen did identify in the photographs certain metal plates which were lowered electrically into trucks to aid loading, and a second set of rubber bumpers on the outside edge of the loading dock, which trucks backed into.

Hansen repeatedly stated that the cause of his fall was the rubber bumpers which acted as a stop for the hand trucks. When asked if he could have tripped over the metal plates on the dock and not over the rubber strips, Hansen replied:

> "Well, to be truthful, all I know is I caught my heel on one of those bumper things, and it's a possibility, I really couldn't tell you because it all happened so fast that I, that I couldn't really say now \*\*\*."

Later in the deposition, the plaintiff responded as follows to questions posed by opposing counsel:

> "Q. \*\*\* Am I correct that you're certain that the heel of your shoe caught on something on the loading dock when you fell?
>
> A. Definitely so, absolutely, no doubt about it.
>
> Q. But you're not sure whether your heel was hooked on a rubber strip or a metal plate form on the loading dock?
>
> A. No, I'm almost certain it was on that strip that keeps the truck from rolling over. I'd almost swear to that."

Several days after the deposition Hansen returned to the post office for the first time in the 3½ years since his accident and inspected the premises. After this visit, his attorney sent opposing counsel a letter which stated that his client had been confused and that the rubber strip he had described was at his previous place of employment, rather than at the post office where he was injured. The attorney continued: "Upon visiting the premises he [Hansen] found that what he actually caught his heel on was some portion of the dock-plate assembly \*\*\*."

Almost a year and a half later, Kinney moved for summary judgment, asserting in its motion that as the architect of the loading dock it had neither designed the rubber bumper strips nor supervised their construction. These assertions were supported by the affidavit of the architect of the dock, who was employed by Kinney. Hansen responded to this motion by submitting his affidavit, in which he stated that after refreshing his recollection by returning to the site of the

injury, he realized that he had tripped over the metal plates and not a rubber bumper. Kinney thereafter filed a motion seeking to strike the counteraffidavit, contending that the plaintiff could not dispute the statements in his deposition.

After hearing argument, the circuit court granted Kinney's motion for summary judgment. The judge reasoned that although the complaint and the deposition predicated liability on tripping over the rubber bumpers, Kinney clearly was not responsible for them. The court noted that in Hansen's deposition he stated unequivocally that he tripped over a rubber bumper.

Hansen then filed a motion for reconsideration and for leave to file an amended affidavit. In a second hearing, the court granted the plaintiff leave to file his amended affidavit, which stated that Hansen's memory had been refreshed after visiting the scene of the accident and that he had tripped over metal plates, but the court reaffirmed its ruling on summary judgment. This appeal followed.

The law surrounding summary judgment is well settled. Summary judgment is a salutary rule of judicial administration, designed to alleviate the burdens of unnecessary litigation on both the courts and the parties. Where a case presents no genuine issue of material fact, but rather requires only the application of recognized legal principles to an agreed factual situation, a trial is unnecessary. (See *Thompson v. Webb* (1985), 138 Ill. App. 3d 629, 486 N.E.2d 326; *Glen Ellyn Savings & Loan Association v. State Bank* (1978), 65 Ill. App. 3d 916, 382 N.E.2d 349.) Given that summary judgment is a drastic remedy, it should be awarded with due care and caution. (*Bloomer Amusement Co. v. Eskenazi* (1979), 75 Ill. App. 3d 117, 394 N.E.2d 16; *Hill v. Lutheran Hospital* (1978), 58 Ill. App. 3d 1003, 374 N.E.2d 1147.) In deciding whether to grant summary judgment, a court must construe the evidence strictly against the movant and liberally in favor of the opponent of the motion. (*Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 415 N.E.2d 397; *Cassaday v. Hendrickson* (1985), 138 Ill. App. 3d 925, 486 N.E.2d 1329.) This determination should be made based on the entire record properly before the court, including the pleadings, affidavits, admissions of record, depositions, and exhibits. Ill. Rev. Stat. 1985, ch. 110, par. 2—1005; *Stringer v. Zacheis* (1982), 105 Ill. App. 3d 521, 434 N.E.2d 50.

Applying these standards, we believe summary judgment was appropriate in this case. Kinney's contention that it was not responsible for the rubber bumpers is undisputed, hence this contention must be accepted as correct. (See *Eberle v. Brenner* (1985), 131 Ill. App. 3d 394, 475 N.E.2d 639.) If Hansen tripped over a bumper, then Kin-

ney's actions were not the proximate and legal cause of the accident and the judgment must be affirmed. *Kimbrough v. Jewel Cos.* (1981), 92 Ill. App. 3d 813, 818, 416 N.E.2d 328.

■■■ A judicial admission is a deliberate, clear, unequivocal statement of a party about a concrete fact within that party's peculiar knowledge. (*McCormack v. Haan* (1960), 20 Ill. 2d 75, 169 N.E.2d 39; *Baker-Wendell, Inc. v. Cohon & Associates, Ltd.* (1981), 100 Ill. App. 3d 924, 929, 427 N.E.2d 317; *Huber v. Black & White Cab Co.* (1958), 18 Ill. App. 2d 186, 151 N.E.2d 645.) Additionally, a party cannot create a factual dispute by contradicting a previously made judicial admission. (See *Smith v. Ashley* (1975), 29 Ill. App. 3d 932, 935, 332 N.E.2d 32; *Fountaine v. Hadlock* (1971), 132 Ill. App. 2d 343, 270 N.E.2d 222.) As this court noted in a recent case: "[A] party may not create a genuine issue of material fact by taking contradictory positions, nor may he remove a factual question from consideration just to raise it anew when convenient." (*Schmahl v. A. V. C. Enterprises, Inc.* (1986), 148 Ill. App. 3d 324, 331, 499 N.E.2d 572.) The frequently stated purpose of the doctrine of judicial admissions is to eliminate the temptation to commit perjury. See *Schmahl v. A. V. C. Enterprises, Inc.* (1986), 148 Ill. App. 3d 324, 331, 499 N.E.2d 572; *Smith v. Ashley* (1975), 29 Ill. App. 3d 932, 935, 332 N.E.2d 32.

■■ Thus, assertions made in a deposition constitute binding judicial admissions only if they are unequivocal. In cases in which the Illinois courts have had to decide if a statement made in a deposition is equivocal, they have not expressly stated whether the resolution of this matter presents a question of law or one of fact. However, the courts have assumed that the issue of equivocalness is a question of law and have so regarded it when considering motions for summary judgment. See *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1979), 71 Ill. App. 3d 562, 390 N.E.2d 60; *Gauchas v. Chicago Transit Authority* (1965), 57 Ill. App. 2d 396, 206 N.E.2d 752; *Tennes v. Tennes* (1943), 320 Ill. App. 19, 50 N.E.2d 132.

■■ Moreover, the question of whether a statement made in a deposition is equivocal is closely analogous to the question of whether a contract is ambiguous. Indeed, Webster's New International Dictionary 769 (3d ed. 1981) indicates that a primary meaning of the word "equivocal" is "ambiguous." It is well settled that whether an ambiguity exists in a contract is a question of law for the trial court to determine. (*National Tea Co. v. Commerce & Industry Insurance Co.* (1983), 119 Ill. App. 3d 195, 456 N.E.2d 206; *Joseph v. Lake Michigan Mortgage Co.* (1982), 106 Ill. App. 3d 988, 436 N.E.2d 663.) In cases where there is an ambiguity in the contract, a fact question is pre-

sented for resolution by the trier of fact. (See *Lichtenstein v. Anvan Co.* (1978), 62 Ill. App. 3d 91, 378 N.E.2d 1171; *Storybook Homes, Inc. v. Carlson* (1974), 19 Ill. App. 3d 579, 312 N.E.2d 27.) Therefore, in the absence of ambiguity or equivocation in the contract or the statement, as the case may be, interpretation is the province of the court and may be done by summary judgment. See *Thomas v. Northington* (1985), 134 Ill. App. 3d 141, 479 N.E.2d 976; *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1979), 71 Ill. App. 3d 562, 570, 390 N.E.2d 60.

Hansen argues that his deposition was equivocal. He relies primarily on the following:

"Q. Now, let me ask you this. Is it possible that it was on this perimeter edge of these plates that you tripped?

A. Well, to be truthful, all I know is I caught my heel on one of those bumper things, and it's a possibility, I really couldn't tell you because it all happened so fast that I, that I couldn't really say now ***."

While a portion of the above answer supports Hansen's position, in its entirety his response shows that at the time of the deposition he believed he knew what he had tripped over. Moreover, in the same deposition Hansen described the bumper strips in detail, while repeating that the rubber bumpers were the cause of his accident. Furthermore, he appeared unconcerned by the absence of the rubber strips in the photographs, which he explained as being due to the fact that the bumpers were out of the range of the photographs.

▄ Accordingly, we find that Hansen's deposition in its entirety was quite unequivocal; it is evident from his testimony that at the time of his deposition Hansen clearly believed that he had tripped over the rubber bumpers. When analyzing whether his testimony was equivocal, this court is obligated to consider the whole deposition. As our supreme court noted in *McCormack*, this "determination *** depends upon an evaluation of all of his testimony, and not just a part of it." *McCormack v. Haan* (1960), 20 Ill. 2d 75, 78, 169 N.E.2d 39.

Other courts have held that testimony was unequivocal in cases where the question was closer than it is in this case. For example, in *Tom Olesker's*, when the deponent was asked whether he discovered an allegedly libellous statement in January or February of 1969, he replied, "Could have, that's right," an answer which the court held was unequivocal and deliberate. (*Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1979), 71 Ill. App. 3d 562, 564, 390 N.E.2d 60.) Additionally, the court in *Tennes* held that the following statement was unequivocal: "[T]he only thing I vividly re-

482

member at that point is I *evidently* dozed for a minute \*\*\*." (Emphasis added.) *Tennes v. Tennes* (1943), 320 Ill. App. 19, 23, 50 N.E.2d 132.

For testimony to be binding, it must also be peculiarly within the knowledge of the deponent. (See *Schmahl v. A. V. C. Enterprises, Inc.* (1986), 148 Ill. App. 3d 324, 499 N.E.2d 572 (only the deponent knew his financial situation); *Tennes v. Tennes* (1943), 320 Ill. App. 19, 50 N.E.2d 132 (the deponent was the sole person who knew if he fell asleep at the wheel).) One court held that how individuals were selected as officers of a church was not exclusively within their knowledge, thus their statements that they were appointed and not elected were not judicial admissions. (*People v. Williams* (1957), 13 Ill. App. 2d 164, 141 N.E.2d 645.) Nevertheless, in this case only Hansen knows what he tripped over because there were no eyewitnesses to the accident. Therefore, this doctrine is of no avail to the plaintiff in the instant case.

Consequently, Hansen is bound by his deposition, which states that he tripped over a rubber bumper, an object for which Kinney was not responsible; accordingly, its actions were not the legal or proximate cause of Hansen's injuries. Therefore, the circuit court properly granted summary judgment in favor of Kinney.

Affirmed.

BILANDIC and STAMOS, JJ., concur.