WALTER H. HANSEN, Plaintiff-Appellant, v. RUBY CONSTRUCTION COMPANY, Defendant-Appellee (A. M. Kinney & Associates, Inc., Defendant).

First District (2nd Division) No. 87—86

Opinion filed December 15, 1987.—Rehearing denied January 12, 1988.

John M. Falasz, Jr., Ltd., of Chicago, for appellant.

Modesto, Reynolds & McDermott, of Chicago (Charles A. Wright, Jr., of counsel), for appellee.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

Plaintiff-appellant Walter Hansen brought this action to recover damages arising from injuries sustained when he fell from a loading dock. He sued both the general contractor who built the dock, Ruby Construction Company (hereinafter Ruby), and the architect, A. M. Kinney & Associates, Inc. (hereinafter Kinney). The circuit court granted summary judgment to both Ruby and Kinney. This court has previously upheld the summary judgment awarded to Kinney. *Hansen v. Ruby Construction Co.* (1987), 155 Ill. App. 3d 475, 508 N.E.2d 301 (hereinafter *Hansen* I).

For the most part, the facts presented to this court are the same as in *Hansen* I, from which we quote:

"Hansen stated in his discovery deposition that he had been employed by the United States Postal Service for 12 years, but had worked at the branch where he was injured for only several months. He had previously served with that agency at a nearby office, where he also worked on the loading dock.

On the day of the accident, after Hansen noticed a patron he knew, he picked up the patron's mail and walked over toward the edge of the loading dock to hand it to him. Although Hansen had performed this act many times before without incident, on this occasion he fell off the loading dock.

At the taking of his deposition, Mr. Hansen described in detail the rubber bumper strips on which he claimed to have tripped; apparently their purpose was to prevent hand trucks from rolling off the loading dock. When shown pictures of the

dock, however, Hansen was unable to identify the rubber bumpers, explaining that they were beyond the portion of the dock that appeared in the photographs. Nevertheless, Hansen did identify in the photographs certain metal plates which were lowered electrically into trucks to aid loading, and a second set of rubber bumpers on the outside edge of the loading dock, which trucks backed into.

Hansen repeatedly stated that the cause of his fall was the rubber bumpers which acted as a stop for the hand trucks. When asked if he could have tripped over the metal plates on the dock and not over the rubber strips, Hansen replied:

'Well, to be truthful, all I know is I caught my heel on one of those bumper things, and it's a possibility, I really couldn't tell you because it all happened so fast that I, that I couldn't really say now ***.'

Later in the deposition, the plaintiff responded as follows to questions posed by opposing counsel:

'Q. *** Am I correct that you're certain that the heel of your shoe caught something on the loading dock when you fell?

A. Definitely so, absolutely, no doubt about it.

Q. But you're not sure whether your heel was hooked on a rubber strip or a metal plate form [sic] on the loading dock?

A. No, I'm almost certain it was on that strip that keeps the truck from rolling over. I'd almost swear to that.'

Several days after the deposition Hansen returned to the post office for the first time in the 3½ years since his accident and inspected the premises. After his visit, his attorney sent opposing counsel a letter which stated that his client had been confused and that the rubber strip he had described was at his previous place of employment, rather than at the post office where he was injured. The attorney continued: 'Upon visiting the premises he [Hansen] found that what he actually caught his heel on was some portion of the dock-plate assembly ***.' "

*Hansen*, 155 Ill. App. 3d at 577-78.

Thereafter Kinney and Ruby separately moved for summary judgment. In Hansen's response to Ruby, the deposition of an eyewitness was made a part of the record for the first time. The eyewitness, Joseph G. Giammarese, was the person to whom Hansen was attempting to hand the mail when the accident occurred. His testimony was not raised as an issue by either party in *Hansen* I; consequently, it

was not addressed by this court. Giammarese testified that Hansen tripped over a rubber "T"-shaped bumper which was used to keep trucks from damaging the edge of the dock. These bumpers are completely different from the rubber strips referred to by Hansen in his deposition.

The circuit court granted summary judgment to both Ruby and Kinney, stating that because of Hansen's statements in his deposition it could not consider his affidavit or Giammarese's deposition. Hansen appealed as to both parties, but neither party sought to consolidate the appeals. In Hansen's appeal as to Kinney, we held that his deposition statements were unequivocal, thereby constituting binding judicial admissions, and we affirmed the circuit court's order granting summary judgment to Kinney.

OPINION

■■ At the outset, it should be recognized that neither party has mentioned *Hansen I*, despite the fact that the case was decided prior to the time their briefs were filed in the case presently before this court. However, we are cognizant of the fact that the law of the case doctrine and *res judicata* are both inapplicable in this case since the parties are different from those involved in *Hansen I*. (*Chicago Title & Trust Co. v. County of Cook* (1983), 120 Ill. App. 3d 443, 453, 457 N.E.2d 1326 (*res judicata*); *Miscevich v. Commonwealth Edison Co.* (1982), 110 Ill. App. 3d 400, 442 N.E.2d 338 (law of the case).) Nevertheless, the same basic rules of law which governed *Hansen I* also apply in the case at bar. The only major difference we are confronted with in the instant case is the fact of Giammarese's deposition.

■■ The law as to whether Hansen can utilize this latest deposition is indisputable. We have previously summarized the applicable law as follows: "Having made these judicial admissions so adverse to her claim, plaintiff *** could not effectively contradict them by attempting to adopt inconsistent evidence which might be produced by other witnesses or by attempting to supply additional but inconsistent allegations to her pleading." (*Kosin v. Shero* (1977), 45 Ill. App. 3d 1047, 1051, 360 N.E.2d 572; accord *O'Neill v. Chicago Transit Authority* (1972), 5 Ill. App. 3d 69, 72, 283 N.E.2d 99.) In *Hansen I*, we noted that to constitute a binding admission the information on which the admission is based must be uniquely within the personal knowledge of the party making it. In cases involving last-minute attempts to introduce a witness' testimony, the courts have not insisted that the information which the deponent furnishes in his deposition be "unique"; rather, they have required only that it be within the party's

personal knowledge. *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1979), 71 Ill. App. 3d 562, 390 N.E.2d 60; *Kosin,* 45 Ill. App. 3d 1047, 360 N.E.2d 572.

As in *Hansen* I, the case which is most helpful is *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1979), 71 Ill. App. 3d 562, 390 N.E.2d 60. In *Tom Olesker's,* Mr. Olesker stated in his deposition that in January or February of 1969 he first learned of the defendant's allegedly defamatory statement. (*Tom Olesker's,* 71 Ill. App. 3d at 564-65.) Although the defendant wanted to continue questioning Mr. Olesker, the deposition was adjourned with the understanding that it would be continued at a later date in order that the defendant could complete his interrogation of Mr. Olesker. (*Tom Olesker's,* 71 Ill. App. 3d at 566.) Instead, the defendant moved to strike and dismiss the action as being barred by the statute of frauds, as it would have been had Mr. Olesker first learned of the fraud at any time prior to March 3, 1969. In Mr. Olesker's answer to the motion, he filed an affidavit wherein he stated that he actually learned of the fraud in late March or early April of 1969. (*Tom Olesker's,* 71 Ill. App. 3d at 567.) He also submitted his son's affidavit in which Tom Olesker, Jr., indicated that his father did not learn of the allegedly defamatory report until late March or early April. The court then allowed the defendant to redesignate its motion as one for summary judgment, ordered the parties to take the discovery deposition of Olesker's son, and then held that Mr. Olesker was bound by his judicial admission. (*Tom Olesker's,* 71 Ill. App. 3d at 567-68.) Although the court had required the parties to take Tom Olesker, Jr.'s, deposition, the court refused to allow the admission of the deposition, saying, "[W]e fail to see how the deposition or affidavit of Tom Olesker, Jr., would change the result in this case. Once a party makes a judicial admission adverse to his or her claim, that party cannot contradict the admission by adopting inconsistent evidence produced by other witnesses." *Tom Olesker's,* 71 Ill. App. 3d at 568, citing *Kosin,* 45 Ill. App. 3d 1047, 360 N.E.2d 572.

*Tom Olesker's* is indistinguishable from the case *sub judice.* Hansen is bound by his judicial admission and cannot be permitted to change his story by introducing the testimony of Giammarese. The fact that in *Tom Olesker's* the entire controversy was resolved in one case, rather than in separate appeals as here, is irrelevant. That Giammarese's deposition was not raised as an issue in *Hansen* I does not diminish the applicability of the judicial policy of discouraging perjury.

Since Ruby had no part in the installation of the rubber strips in

question, the same result we reached in *Hansen* I obtains here. Accordingly, Hansen was bound by his judicial admission, and the circuit court properly awarded summary judgment to Ruby.

Affirmed.

STAMOS and BILANDIC, JJ., concur.