IRVING ARNOLD, Plaintiff-Appellant, v. CONSOLIDATED RAILROAD CORPORATION, Defendant-Appellee.

First District (6th Division)   No. 1—90—2373

Opinion filed March 20, 1992.

Karlin & Fleisher and David A. Novoselsky & Associates, both of Chicago (David A. Novoselsky, of counsel), for appellant.

Michael C. Fedota and Timothy I. McArdle, both of Brinton & Fedota, of Chicago, for appellee.

PRESIDING JUSTICE EGAN delivered the opinion of the court:

The plaintiff, Irving Arnold, appeals from an order entered granting summary judgment in favor of the defendant, Consolidated Railroad Corporation (Conrail). The sole issue is whether the plaintiff made a judicial admission that removed from a fact finder's consideration the question of whether the defendant's conduct was the proximate cause of the plaintiff's injuries.

The plaintiff, Irving Arnold, was employed as a police officer by Conrail. On May 5, 1986, in the course of his employment, he was struck by a motorcycle while he was driving a patrol car owned by Conrail. He filed a complaint against Conrail, alleging that Conrail had violated the Federal Employers' Liability Act (FELA) (45 USC §51 *et seq.* (1988)). In his second amended complaint he alleged that Conrail provided him with a company car that had a defective driver's seat. The plaintiff alleged that the seat's back support was broken, thus preventing him from sitting up straight and having adequate vision, and that the seat was "in a depressed condition forcing plaintiff to sit so low as to not have adequate vision of other vehicles."

Conrail moved for summary judgment and attached excerpts from the plaintiff's deposition. The judge allowed the motion for summary judgment and later denied the plaintiff's motion to reconsider.

In his deposition, the plaintiff testified that on May 5, 1986, he was driving Conrail patrol car C3858-X, which had been his normal patrol vehicle for about one year. The driver's seat of that car had a sag in the bottom cushion, and the back of the seat was tilted back at a 45 degree angle. He had reported the defective seat to Patrolman Frank Blazak, who was in charge of the cars.

The plaintiff began his shift at 4 p.m. At approximately 7:45 p.m., he was driving southbound on Stewart Avenue near its intersection with 61st Street in Chicago. He was part of a team of Conrail police officers escorting a train out of the yard.

He was traveling approximately 10 miles per hour as he approached the intersection of 61st and Stewart. When he arrived at the intersection, he stopped and put his patrol car in "park." There was no traffic on Stewart or 61st Street. He looked to his left, above the viaduct and saw the rear end of the southbound train just clearing 61st Street. He had parked at this same intersection and watched the train depart the yard two or three times a day for the previous 20 years.

After the train passed 61st Street, he put his car in "drive" and started to proceed south. He looked once to his left and once to his right. As he looked to his left, he did not see any cars under the viaduct on 61st Street. He then testified as follows:

"Q. Did you have any trouble looking to your left or right prior to entering the intersection?

A. Well, I couldn't see too good because, like I said, with the seat, I'm sitting back, I'm actually looking up; my view was blocked.

Q. But you proceeded anyway into the intersection—

A. Yes.

Q. —without knowing whether there was anything coming from the left or right?

A. Well, a car, I could see a car probably; but a motorcycle, no.

Q. But your testimony is you did look to the left?

A. Yes.

Q. For how long did you look to the left?

A. Just a few seconds.

Q. Did anything block your view as you looked to the left?

A. No.

Q. Did anything block your view as you looked to the right?

A. No."

The plaintiff testified that he proceeded to enter the intersection, traveling at approximately two miles per hour; he did not depress the accelerator of his patrol car. He did not see or hear the motorcycle approaching his vehicle. His first indication of the presence of the motorcycle was upon impact. At the time of the impact, the plaintiff was looking southeast toward the viaduct over 61st Street, straight ahead and to his left. The motorcycle hit the center of the driver's side door of the patrol car. The driver of the motorcycle flew through the window of the patrol car and landed in the plaintiff's lap. The plaintiff was semi-conscious from the time of impact until he was taken to the hospital.

More of the plaintiff's testimony is as follows:

"Q. Do you believe that unit 3858-X was defective in any way on the date of your accident?

A. Yes.

Q. How so?

A. The seat.

Q. How was the seat defective?

A. Well, it had a sag, the seat had a sag in it, the part you sit on; and the back rest, it leaned all the way back like a reclining chair, you were back like this here (indicating), in other words, I'm looking up this way (indicating).

\* \* \*

Q. Prior to entering the intersection of Stewart and 61st, did you lean forward to look to the left and right?

A. Yes, I did.

Q. Did you have any trouble looking left or right?

A. Well, you get up and then, you're back; yes.

Q. But when you leaned forward, did you see to the left and see to the right?

A. Yes.

Q. Other than the seat defect that you testified to, was the vehicle defective in any other way on the date of your accident?

A. No.

Q. How did the condition of the seat cause a motorcycle to hit your vehicle?

A. Well, it blocked part of my view.

Q. Anything else?

A. No.

Q. If you had seen the motorcycle sooner, could you have avoided the accident?

PLAINTIFF'S ATTORNEY: Objection, total speculation.

DEFENDANT'S ATTORNEY: Go ahead.

A. I doubt it."

At the conclusion of the defendant's attorney's questions, the plaintiff testified as follows to the questions of his own attorney:

"Q. Just very quickly, Mr. Arnold, in response to one of Mr. Lewis' questions regarding whether the accident could have been avoided if the seat wasn't defective, if it wasn't defective, as you have described, you would have been in a better position to see to your left, correct?

A. Correct.

Q. And if you were in a better position to see to your left, you would have been able to see a vehicle, be it a car or a motorcycle, approaching from the left, correct?

A. Correct.

Q. And if you were able to see that, then you wouldn't have started out into the intersection, right?

A. Correct.

Q. And if you didn't start out into the intersection, the accident would not have happened, would it?

A. That's right."

The defendant's motion for summary judgment alleged that the plaintiff's deposition testimony established that the defective seat in the patrol car was not the cause of his accident, because the plaintiff admitted that he leaned forward in his seat and was able to look both ways before he entered the intersection. The defendant also relied on the plaintiff's testimony that he could not have avoided this accident even if he had seen the motorcycle sooner. In addition to excerpts from the plaintiff's deposition the defendant filed a sworn statement by another Conrail police officer, John Wilkins. Wilkins testified that he was parked 30 feet north of the intersection when the accident occurred. He said that he could see the plaintiff sitting in his vehicle, that the plaintiff was sitting normally, and that he saw the plaintiff look both ways before entering the intersection. He could not recall anything about the vehicle that obstructed the plaintiff's vision.

We are uncertain of the specific ground upon which the trial judge based her summary judgment ruling. But in this court the defendant maintains that summary judgment was properly entered because of the testimony of the plaintiff that he "leaned forward and could see to the left and to the right and that even if he had seen the motorcy-

cle sooner the accident could not have been avoided." The defendant argues that the plaintiff's testimony was a judicial admission and that the later questioning by the plaintiff's attorney was an impermissible attempt to contradict the judicial admission.

At the outset, we express disagreement with the plaintiff's argument that a party may not make a judicial admission in a discovery deposition. The case cited by the plaintiff, *Trapkus v. Edstrom's, Inc.* (1986), 140 Ill. App. 3d 720, 489 N.E.2d 340, if it is to be interpreted as the plaintiff argues, is contrary to the greater weight of authority. See, *e.g., Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1979), 71 Ill. App. 3d 562, 390 N.E.2d 60; *Fountaine v. Hadlock* (1971), 132 Ill. App. 2d 343, 270 N.E.2d 222.

■ The general rule provides that in order to qualify as a judicial admission, a statement must be clear, unequivocal and within a party's personal knowledge. In addition, a party's admission must be deliberate testimony relating to a concrete fact and not an inference or uncertain summary. (*Derby Meadows Utility Co. v. Inter-Continental Real Estate* (1990), 202 Ill. App. 3d 345, 559 N.E.2d 986.) The issue in this case, therefore, is reduced to this: Whether the plaintiff's testimony that he doubted that he could have avoided the accident if he had "seen the motorcycle *sooner*" was a clear unequivocal statement relating to a concrete fact. (Emphasis added.) We judge that it was not.

The plaintiff had testified that he first became aware of the motorcycle at the time of impact. The only reasonable interpretation of the pivotal question, therefore, is that the plaintiff was asked if the accident could have been avoided if he had seen the motorcycle "sooner" than the time of impact. The imprecise term "sooner" could apply to a period of a split second as well as several minutes. The plaintiff's answer could be interpreted to mean that he doubted that the accident could have been avoided if he had seen the motorcycle a second before the impact. In summary, the plaintiff was asked a hypothetical question, not a question calling for a statement of fact; the defendant's question used an imprecise term; and the plaintiff gave an imprecise answer. Under no circumstances could his answer to the question asked be considered a judicial admission.

The principal cases relied on by the defendant are *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1979), 71 Ill. App. 3d 562, 390 N.E.2d 60, and *Hansen v. Ruby Construction Co.* (1987), 155 Ill. App. 3d 475, 508 N.E.2d 301. In *Tom Olesker's*, the plaintiff was asked when he first learned of an allegedly libelous credit report generated by the defendant. When asked whether his

first notice of the defamatory report was in January or February of 1969, he responded, "Yes—[c]ould have, that's right." (71 Ill. App. 3d at 564.) Later in the deposition, referring to the report, the plaintiff was asked, "[Y]ou received [the report] here in Chicago?" He responded, "Right." He was then asked, "In January or February of 1969?" He responded, "Un huh." (71 Ill. App. 3d at 565-66.) In *Hansen* the plaintiff testified that he was "almost certain" that his heel had hooked on a rubber strip rather than a metal plate on a loading dock. He said he would "almost swear to that." (*Hansen*, 155 Ill. App. 3d at 478.) After the defendant filed a motion for summary judgment asserting that no rubber strip was designed into the loading dock, the defendant filed an affidavit stating that he had tripped over a metal plate, rather than a rubber strip. In both *Tom Olesker's* and *Hansen* the court held that the statements of the plaintiffs constituted clear and unequivocal statements of fact. Neither case is factually apposite here. Closer in point and support for the plaintiff's position is *Thomas v. Northington* (1985), 134 Ill. App. 3d 141, 479 N.E.2d 976. In *Thomas*, the defendant was asked at trial to estimate the distance between his truck and the car in which the plaintiffs were riding. He testified that his truck was five to six feet behind the plaintiffs' vehicle. The plaintiffs contended that this was a judicial admission of his negligence which supported a judgment *n.o.v.* in their favor. The appellate court rejected that contention and affirmed the judgment, stating: "[W]e believe that defendant, having been asked to estimate the distance between his vehicle and the car in which plaintiffs were riding, did not purport to speak with certitude, and his answer cannot be deemed to be a binding admission." 134 Ill. App. 3d at 148.

█ The defendant seems to argue that we should not consider the rehabilitation of the plaintiff's testimony because, the defendant maintains, the "plaintiff has attempted to negate the honest answers of his client by asking a series of leading questions at the conclusion of his deposition." No objection was made to the questions; consequently, if the defendant is now objecting to the use of the leading questions, that objection is waived. Moreover, Supreme Court Rule 206(c) (134 Ill. 2d R. 206(c)) permits the questioning of a deponent as if under cross-examination by any party. For that reason, we believe we may properly consider the answers given by the plaintiff to questions by his own attorney.

█ Where a party has not made deliberate, repeated, unequivocal statements, it is possible, for purposes of a motion for summary judgment, to controvert the claimed admission made in those statements. (*Young v. Pease* (1983), 114 Ill. App. 3d 120, 448 N.E.2d 586.) In

*Schmall v. Village of Addison* (1988), 171 Ill. App. 3d 344, 525 N.E.2d 258, the plaintiff's expert testified at a deposition that, in his opinion, the defendant electric utility company had not violated any recognized standard rule or regulation. The defendant filed a motion for summary judgment based upon the deposition testimony of the plaintiff's expert. The plaintiff then submitted the affidavit of the expert in which he sought to explain his previous testimony. The trial judge struck the affidavit and granted summary judgment. The appellate court reversed, holding that the plaintiff's expert was entitled to explain his previous deposition testimony. See also *Tongate v. Wyeth Laboratories* (1991), 220 Ill. App. 3d 952, 580 N.E.2d 1220.

■ It is our position that the subsequent questions by the plaintiff's attorney removed any inference that the plaintiff could not have avoided the accident even if the seat had not been defective. So that our position is clear, however, we express the view that even in the absence of the rehabilitation by his attorney, the answer the plaintiff gave to the hypothetical question asked by the defendant's attorney was not a judicial admission and could not support the order of summary judgment.

For these reasons, the judgment of the circuit court is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

McNAMARA and LaPORTA, JJ., concur.